ROBERT W. FERGUSON
Attorney General

SPENCER W. COATES, WSBA #49683
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

ZACHARY J. PEKELIS, WSBA #44557
Special Assistant Attorney General
PACIFICA LAW GROUP LLP
1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404
(206) 245-1700

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLAS ROLOVICH,<br><br>                         Plaintiff,<br><br>v.<br><br>WASHINGTON STATE<br>UNIVERSITY, et al.,<br><br>                         Defendants. | NO. 2:22-CV-00319-TOR<br><br>WSU DEFENDANTS'<br>MOTION TO DISMISS<br><br>May 11, 2023<br>With Oral Argument: 11:00 a.m.<br>Spokane Courtroom 902 |

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................... 1

II.  FACTS ................................................................................ 2

    A.  The COVID-19 Pandemic and Washington's Response................... 3

    B.  The Delta Surge and Proclamation 21-14............................... 4

    C.  WSU's Implementation of the Proclamation.......................... 5

    D.  Rolovich Requests a Religious Exemption and Accommodation...... 6

    E.  The Department Determines It Cannot Accommodate Rolovich ...... 8

    F.  WSU Denies Rolovich's Request and Begins the Separation Process ........................................................................ 10

    G.  WSU Denies Rolovich's Appeal and Terminates His Employment.. 11

    H.  Rolovich's Lawsuit ......................................................... 12

III. ARGUMENT ........................................................................ 13

    A.  Legal Standard .............................................................. 13

    B.  The Complaint Fails to State a Title VII Claim (Count IV)............... 14

        1.  Rolovich has no Title VII claim against Chun ........................... 14

        2.  The Complaint fails to state a Title VII claim against WSU...... 14

    C.  The Complaint Fails to State a WLAD Claim (Count II) ................. 22

    D.  Rolovich's § 1983 Claims Must Be Dismissed (Counts V and VI)... 22

        1.  WSU cannot be sued under § 1983............................................. 23

        2.  Rolovich fails to state a § 1983 claim against Chun................... 24

WSU DEFENDANTS' MOTION TO DISMISS - i
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

        3.    Chun has qualified immunity.......................................... 26

    E.   The Complaint Fails to State a Due Process Claim........................... 35

    F.   Rolovich Has No Claim Under the State Constitution (Count III) .... 38

    G.   Rolovich's Contract Claims Must Be Dismissed (Count I) ............... 38

IV.  CONCLUSION ........................................................................... 40

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF AUTHORITIES

## Federal Cases

*Addison v. Amazon.com, Inc.*
  No. CV 22-01071 (FLW), 2022 WL 2816946 (D.N.J. July 19, 2022)...............18

*Africa v. Pennsylvania*
  662 F.2d 1025 (3d Cir. 1981) ..................................................................20

*Akers v. Brookdale Univ. Hosp. & Med. Ctr.*
  No. CV06-00350(3MC)(VVP), 2006 WL 2355842 (E.D.N.Y. Aug. 15,
  2006).............................................................................................................40

*Alvarado v. City of San Jose*
  94 F.3d 1223 (9th Cir. 1996) ................................................................18

*Ansonia Bd. of Educ. v. Philbrook*
  479 U.S. 60 (1986) .............................................................................14

*Ashcroft v. al-Kidd*
  563 U.S. 731 (2011) ...........................................................................32

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ........................................... 13, 23, 28, 29

*Aukamp-Corcoran v. Lancaster Gen. Hosp.*
  No. CV 19-5734, 2022 WL 507479 (E.D. Pa. Feb. 18, 2022)...........................31

*Bacon v. Woodward*
  No. 2:21-CV-0296-TOR, 2021 WL 5183059 (E.D. Wash. Nov. 8, 2021)..........29

*Balint v. Carson City*
  180 F.3d 1047 (9th Cir. 1999) ...........................................................14

*Bartlett v. N.Y. State Bd. of Law Examiners*
  970 F. Supp. 1094 (S.D.N.Y. 1997).....................................................36

*Black v. Grant Cnty. Pub. Util. Dist.*
  No. 2:17-CV-365-RMP, 2019 WL 2617236  (E.D. Wash. June 26, 2019).........22

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Blackwell v. Lehigh Valley Health Network*
 No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023)........ 20, 21

*Brox v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth.*
 590 F. Supp. 3d 359 (D. Mass. 2022)....................................................15

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*
 508 U.S. 520 (1993) ..........................................................................28

*Church v. Biden*
 No. CV 21-2815 (CKK), 2022 WL 1491100 (D.D.C. May 11, 2022) ................3

*City & Cnty. of S.F. v. Sheehan*
 575 U.S. 600 (2015) ..........................................................................26

*City of Oklahoma City v. Tuttle*
 471 U.S. 808 (1985) ..........................................................................23

*Cloutier v. Costco Wholesale Corp.*
 390 F.3d 126 (1st Cir. 2004) ..............................................................16

*Comfort & Fleming Ins. Brokers, Inc. v. Hoxsey*
 613 P.2d 138, 141 (Wash. Ct. App. 1980) ............................................40

*Conservation Force v. Salazar*
 646 F.3d 1240 (9th Cir. 2011)............................................................13

*Cousins v. Lockyer*
 568 F.3d 1063 (9th Cir. 2009) ...........................................................30

*Crayon v. Asuncion*
 No. CV 20-0192-JFW (AS), 2020 WL 4904866 (C.D. Cal. June 26, 2020).......21

*Crider v. Spectrulite Consortium, Inc.*
 130 F.3d 1238 (7th Cir. 1997)............................................................39

*D'Cunha v. Northwell Health Sys.*
 No. 1:22-CV-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023).........15

*Davis v. Scherer*
 468 U.S. 183 (1984) ..........................................................................30

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Davis Wire Corp. v. Teamsters Loc. Union No. 117*
  152 F. Supp. 3d 1326 (W.D. Wash. 2015) ......................................39

*Doe v. San Diego Unified Sch. Dist.*
  19 F.4th 1173 (9th Cir. 2021) ...............................................33

*Does 1-2 v. Hochul*
  --- F. Supp. 3d ----, No. 21-CV-5067(AMD) (TAM), 2022 WL 4637843
  (E.D.N.Y. Sept. 30, 2022) ...................................................15

*Does 1-6 v. Mills*
  16 F.4th 20 (1st Cir. 2021) .............................................. 4, 15

*Egelkrout v. Aspirus, Inc.*
  No. 22-CV-118-BBC, 2022 WL 2833961 (W.D. Wis. July 20, 2022)...............21

*Emp't Div., Dep't of Hum. Res. of Or. v. Smith*
  494 U.S. 872 (1990) ........................................................19

*Engle v. Isaac*
  456 U.S. 107 (1982) ........................................................38

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*
  877 F.3d 487 (3d Cir. 2017) ............................................ 18, 19

*Felarca v. Birgeneau*
  891 F.3d 809 (9th Cir. 2018)...............................................32

*Florida v. Dep't of Health & Hum. Servs.*
  19 F.4th 1271 (11th Cir. 2021)..............................................3

*Gamble v. Pac. NW Reg'l Council of Carps.*
  No. 2:14-cv-455RSM, 2015 WL 402782 (W.D. Wash. Jan. 29, 2015)..............13

*Groff v. DeJoy*
  143 S. Ct. 646 (2023) ......................................................14

*Grubbs v. Arizona*
  No. CV-20-02369-PHX-DJH, 2021 WL 4552419 (D. Ariz. Oct. 5, 2021).........16

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982) ........................................................26

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Hightower v. City & Cnty. of S.F.*
No. C-12-5841 EMC, 2013 WL 361115 (N.D. Cal. Jan. 29, 2013) .....................13

*Hunter v. Sup. Ct. of N.J.*
951 F. Supp. 1161 (D.N.J. 1996).............................................................................30

*Jacobs v. Clark Cnty. School Dist.*
526 F.3d 419 (9th Cir. 2008) ...................................................................................38

*Kane v. de Blasio*
--- F. Supp. 3d ----, No. 21 CIV. 7863 (NRB), 2022 WL 3701183
(S.D.N.Y. Aug. 26, 2022).........................................................................................15

*King v. Cnty. of L.A.*
885 F.3d 548 (9th Cir. 2018) .....................................................................................2

*Leake v. Raytheon Techs. Corp.*
No. CV-22-00436-TUC-RM, 2023 WL 2242857 (D. Ariz. Feb. 27, 2023)........18

*Lilly v. Univ. of Cal.-San Diego*
No. 21-CV-1703 TWR (MSB), 2022 WL 11337682 (S.D. Cal. Oct. 19,
2022)........................................................................................................................27

*Linden v. X2 Biosystems, Inc.*
No. C17-966 RSM, 2019 WL 13240852 (W.D. Wash. Jan. 25, 2019) ...............40

*Love v. N.J. Dep't of Corr.*
No. CIV.A. 10-1714 (GEB), 2011 WL 345964 (D.N.J. Jan. 31, 2011) ..............21

*Lowe v. Mills*
No. 1:21-CV-00242-JDL, 2022 WL 3542187 (D. Me. Aug. 18, 2022) ..............15

*LSO, Ltd. v. Stroh*
205 F.3d 1146 (9th Cir. 2000) .................................................................................26

*Magden v. Easterday Farms*
No. 2:16-CV-00068-JLQ, 2017 WL 1731705 (E.D. Wash. May 3, 2017)..........14

*Mass. Corr. Officers Federated Union v. Baker*
567 F. Supp. 3d 315 (D. Mass. 2021).......................................................................4

*Miller v. Maxwell's Int'l Inc.*
991 F.2d 583 (9th Cir. 1993) ...................................................................................14

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Monaco v. Liberty Life Assur. Co.*
  No. C06-07021 MJJ, 2007 WL 420139 (N.D. Cal. Feb. 6, 2007) ......................39

*O'Hailpin v. Hawaiian Airlines, Inc.*
  583 F. Supp. 3d 1294 (D. Haw. 2022) ................................................15

*Pearson v. Callahan*
  555 U.S. 223 (2009) ........................................................ 26, 27

*Pedreira v. Ky. Baptist Homes for Child., Inc.*
  579 F.3d 722 (6th Cir. 2009) ........................................................17

*Peterson v. Hewlett-Packard Co.*
  358 F.3d 599 (9th Cir. 2004) ........................................................16

*Reynaga Hernandez v. Skinner*
  969 F.3d 930 (9th Cir. 2020) ........................................................23

*S. Cal. Gas Co. v. City of Santa Ana*
  336 F.3d 885 (9th Cir. 2003) ........................................................23

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*
  44 F.4th 867 (9th Cir. 2022) ........................................................32

*Shafer v. Cnty. of Santa Barbara*
  868 F.3d 1110 (9th Cir. 2017) ........................................................32

*Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*
  4 F.4th 747 (9th Cir. 2021) ..........................................................3

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ........................................................26

*Stamm v. N.Y.C. Transit Auth.*
  No. 04-CV-2163 (SLT), 2006 WL 1027142 (E.D.N.Y. Feb. 7, 2006)...............37

*Steckman v. Hart Brewing, Inc.*
  143 F.3d 1293 (9th Cir. 1998) ........................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308 (2007) ........................................................ 2, 13

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Together Employees v. Mass Gen. Brigham Inc.*
  573 F. Supp. 3d 412 (D. Mass. 2021)....................................................16

*Trans World Airlines, Inc. v. Hardison*
  432 U.S. 63 (1977) .......................................................................14

*Turner v. Ass'n of Apt. Owners of Wailea Point Vill.*
  739 F. App'x 874 (9th Cir. 2018).....................................................17

*United States v. Seeger*
  380 U.S. 163 (1965) .....................................................................19

*Walker v. Newsom*
  No. 2:20-cv-2243 TLN AC P, 2022 WL 1190458 (E.D. Cal. Apr. 21, 2022).........................................................................................37

*We the Patriots USA, Inc. v. Hochul*
  17 F.4th 266, *opinion clarified*, 17 F.4th 368 (2d Cir. 2021)..............15

*Wise v. Inslee*
  No. 2:21-CV-0288-TOR, 2021 WL 4951571 (E.D. Wash. Oct. 25, 2021)...........5

*Wise v. Inslee*
  No. 2:21-CV-0288-TOR, 2022 WL 1243662 (E.D. Wash. Apr. 27, 2022). 28, 33, 37

**State Cases**

*Baldwin v. Sisters of Providence in Wash., Inc.*
  769 P.2d 298 (Wash. 1989).............................................................39

*Blinka v. Wash. State Bar Ass'n*
  36 P.3d 1094 (Wash. Ct. App. 2001) ..............................................38

*Casper v. Securitas Sec. Servs. USA*
  No. 57235-1-I, 2007 WL 809933 (Wash. Ct. App. Mar. 19, 2007)
  (unpublished)............................................................................39

*Kumar v. Gate Gourmet, Inc.*
  325 P.3d 193 (Wash. 2014).............................................................22

*Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*
  899 P.2d 6 (Wash. Ct. App. 1995) .................................................38

WSU DEFENDANTS' MOTION TO
DISMISS - viii
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Reynolds v. Pierce Transit*
  No. 18881-3-II, 1996 WL 533602 (Wash. Ct. App. Sept. 20, 1996)...................40

**Federal Statutes**

42 U.S.C. § 1983 ...................................................................... 2, 12, 22, 23

Title VII, 42 U.S.C. § 2000e ...................................................... 2, 14

**State Statutes**

RCW ch. 49.60 ...............................................................................2

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................... 2, 13

Fed. R. Civ. P. 8(a)(2) ............................................................ 19, 21

Fed. R. Evid. 201 ..........................................................................2

**Other Authorities**

U.S. Centers for Disease Control and Prevention, COVID Data Tracker,
  http://bit.ly/3LadJ5s ...............................................................3

U.S. Centers for Disease Control and Prevention, *Monitoring Incidence of
  COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status —
  13 U.S. Jurisdictions, April 4–July 17, 2021* (Sept.
  17, 2021), http://bit.ly/3YQ9tMM ..........................................4

U.S. Centers for Disease Control and Prevention, *Overview of COVID-19
  Vaccines* (Nov. 1, 2022), http://bit.ly/3FdTjVv ......................4

U.S. Food and Drug Administration, *FDA Authorizes Booster Dose of
  Pfizer-BioNTech COVID-19 Vaccine for Certain Populations* (Sept. 22,
  2021), http://bit.ly/3l2nEiY ....................................................3

U.S. Food and Drug Administration, *FDA Authorizes Pfizer-BioNTech
  COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of
  Age* (Oct. 29, 2021), http://bit.ly/3ZSWgmb..........................3

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

U.S. Food and Drug Administration, *Janssen COVID-19 Vaccine* (May 11, 2022), http://bit.ly/3l3SnvW .......................................................................................3

Washington State Department of Health, *COVID-19 Data Dashboard* ...............3, 4

**Constitutional Provisions**

Wash. Const. art. 1, § 11 ................................................................. 2, 12, 38

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# I.    INTRODUCTION

This is the rare case in which the plaintiff accuses his employer of discriminating against him based on his religious beliefs but, instead of identifying any truly *religious* beliefs, his complaint invokes junk science, conspiracy theories, and other purely secular opinions to explain his opposition to the COVID-19 vaccines. Plaintiff Nicholas Rolovich was the head football coach at Defendant Washington State University (WSU or the University) until December 2021. At that time, an emergency gubernatorial proclamation required state employees to be fully vaccinated against COVID-19, unless they qualified for a medical or religious exemption that could be reasonably accommodated. Throughout the spring and summer of 2021, Rolovich consistently and publicly expressed his refusal to get vaccinated. But he never claimed a *religious* reason for his refusal until he applied for a religious exemption and accommodation less than one week before the deadline. WSU denied Rolovich's request, determining that it could not accommodate him without experiencing an undue hardship. WSU also questioned whether he had sincerely held religious beliefs precluding compliance with the vaccine requirement. WSU then terminated Rolovich's employment for just cause.

Rolovich now claims that Defendants WSU, its Athletics Director Patrick Chun (together, the WSU Defendants), and Governor Jay Inslee discriminated against him on the basis of his religious beliefs. Yet his First Amended Complaint (FAC or Complaint) fails to even generally describe the nature of those beliefs.[1] For that reason, and because accommodating Rolovich would have imposed an undue

---

[1] The Complaint is appended to the Notice of Removal. ECF No. 1-1 at 73–104.

WSU DEFENDANTS' MOTION TO DISMISS - 1
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

hardship on WSU, the Complaint fails to state a claims under Title VII, 42 U.S.C. § 2000e, or the Washington Law Against Discrimination, RCW ch. 49.60 (WLAD).

Rolovich's other claims are also deficient. His claims under 42 U.S.C. § 1983—alleging violations of the Free Exercise Clause and Due Process Clause— fail for a variety of reasons, including because WSU is not a "person" that may be sued under § 1983 and because Rolovich fails to allege unconstitutional conduct by Chun individually, who in any event has qualified immunity. Rolovich's amorphous due process claim fails because he has not plausibly alleged a deprivation of a liberty or property interest or that he received constitutionally inadequate process. Rolovich has no viable claim under article I, section 11 of the Washington Constitution, which does not allow a private right of action for damages based on constitutional violations. Finally, Rolovich's breach of contract claims must be dismissed because Chun is not a party to Rolovich's employment agreement and WSU had "just cause" to discharge Rolovich because (among other reasons) he did not meet a legal requirement of continued employment. For those reasons, the Court should dismiss the Complaint with prejudice.

## II.    FACTS

This factual summary is based on the Complaint, documents it references, and judicially noticeable facts. *See* Fed. R. Civ. P. 12(b)(6); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The WSU Defendants ask the Court to take judicial notice of the government records and data cited herein—including from the U.S. Food and Drug Administration (FDA), the U.S. Centers for Disease Control and Prevention (CDC), and the Washington State Department of Health (DOH). *See* Fed. R. Evid. 201; *King v. Cnty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018).

WSU DEFENDANTS' MOTION TO DISMISS - 2
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## A. The COVID-19 Pandemic and Washington's Response

In response to the pandemic, "[g]overnments at all levels instituted restrictions to curb the transmission of the virus." *Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 752 (9th Cir. 2021). Even with those restrictions, COVID-19 has killed over 1.1 million Americans—including over 15,500 Washingtonians[2]—making it the "deadliest disease in American history." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1275 (11th Cir. 2021) (cleaned up).

On February 29, 2020, amidst the initial COVID-19 outbreak in Washington, Governor Inslee proclaimed a state of emergency. *Slidewaters*, 4 F.4th at 752; Procl. 20-05. Between December 2020 and February 2021, the FDA issued Emergency Use Authorizations ("EUAs") for three COVID-19 vaccines developed by Pfizer, Moderna, and Johnson & Johnson ("J&J").[3] FDA gave full approval to Pfizer's vaccine for people 16 and older on August 23, 2021, and to Moderna's for people 18 and older on January 31, 2022. *Church v. Biden*, No. CV 21-2815 (CKK), 2022 WL 1491100, at *2 (D.D.C. May 11, 2022). The CDC considers the vaccines to be

---

[2] CDC, COVID Data Tracker, http://bit.ly/3LadJ5s (last visit Mar. 12, 2023); DOH, *COVID-19 Data Dashboard*, Disease Activity and Testing, https://bit.ly/3AKV0Gq (last update Mar. 8, 2023).

[3] FDA, *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age* (Oct. 29, 2021), http://bit.ly/3ZSWgmb; FDA, *Janssen COVID-19 Vaccine* (May 11, 2022), http://bit.ly/3l3SnvW; FDA, *FDA Authorizes Booster Dose of Pfizer-BioNTech COVID-19 Vaccine for Certain Populations* (Sept. 22, 2021), http://bit.ly/3l2nEiY.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

safe and effective in reducing the risk of severe illness or death due to COVID-19.[4]

**B. The Delta Surge and Proclamation 21-14**

In summer 2021, the "Delta variant" emerged—a new, highly infectious COVID-19 strain. *See Does 1-6 v. Mills*, 16 F.4th 20, 26–27 (1st Cir. 2021). Twice as infectious as earlier variants, *id.*, Delta spread like wildfire, causing Washington's daily case count to jump from a low of 329 on June 28 to 4,449 on September 7, 2021.[5] While "no vaccine is 100% effective," the COVID-19 vaccines proved highly effective at preventing the virus's spread and severe disease—particularly with the Delta variant. *Mass. Corr. Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 319–20 (D. Mass. 2021). According to a September 2021 CDC report (when Delta was dominant), unvaccinated people were 5 times more likely to contract, 10 times more likely to be hospitalized with, and 11 times more likely to die from COVID-19 than fully vaccinated people.[6] Despite such stark disparities, the Delta surge coincided with a steady decline in vaccination rates.[7] In August 2021, nearly 30% of eligible Washingtonians were unvaccinated. Procl. 21-14 at 2.

On August 9, 2021, Governor Inslee issued Proclamation 21-14 (together with subsequent iterations, the Proclamation), prohibiting healthcare providers and most

---

[4] CDC, *Overview of COVID-19 Vaccines* (Nov. 1, 2022), http://bit.ly/3FdTjVv.

[5] DOH, *COVID-19 Data Dashboard*, Disease Activity and Testing, *supra* note 2.

[6] CDC, *Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status — 13 U.S. Jurisdictions, April 4–July 17, 2021* (Sept. 17, 2021), http://bit.ly/3YQ9tMM.

[7] DOH, *COVID-19 Data Dashboard*, Vaccinations, *supra* note 2.

WSU DEFENDANTS' MOTION TO DISMISS - 4
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

state employees from working after October 18, 2021, without being fully vaccinated against COVID-19, *i.e.*, at least two weeks post-final dose. Procl. 21-14.[8] When it took effect, the Proclamation applied to at least 681,000 workers across the three covered sectors—state government, health care, and education. *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *1 (E.D. Wash. Oct. 25, 2021). The Proclamation required covered employers to evaluate requests for medical and religious exemptions and provide reasonable accommodations as required by state and federal antidiscrimination statutes. Procl. 21-14.2 at 5–6. Covered employers had to "conduct[] an individualized assessment and determination of each individual's need and justification for an accommodation." *Id.* at 6. And covered employers were "prohibited from providing accommodations" if "based on false, misleading, or dishonest grounds or information" or "the personal preference of the individual," rather than "an inability to get vaccinated because of a disability or a conflict with a sincerely held religious belief, practice, or observance." *Id.*

## C. WSU's Implementation of the Proclamation

Before the Governor issued the Proclamation, WSU's COVID-19 vaccine policy had allowed employees to claim an exemption merely by asserting they had a medical reason or "personal/religious" objection. FAC ¶ 33. The Proclamation superseded this policy by providing no exemption for "personal" reasons beyond sincerely held religious beliefs. Declaration of Zachary J. Pekelis (Pekelis Decl.),

---

[8] *See* Office of Gov. Jay Inslee, Proclamations, https://www.governor.wa.gov/office-governor/official-actions/proclamations (last visit Mar. 15, 2023).

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Ex. A.[9] To implement the Proclamation, WSU instructed employees to provide proof of vaccination or request an exemption by October 4, 2021, the last day to get the final dose to be considered fully vaccinated by the October 18 deadline. *Id.*

The University evaluated requests for religious exemptions and accommodations in a two-step process. FAC ¶ 61. First, a committee of staff from WSU Human Resources Services (HRS) and the Office of Civil Rights and Compliance reviewed the exemption request to determine whether it was based on a "sincerely held religious belief." FAC ¶¶ 60–61; Pekelis Decl., Ex. B. That first step was generally "blind"—i.e., "the identities of the individuals requesting exemptions are unknown to the members of the review committee"—unless "additional information is needed through follow-up contact." Pekelis Decl., Ex. B at 20. The second step was a "separate accommodation review." *Id.* at 21. That step determined "whether the unvaccinated employee will be able to perform their duties without risking the health and safety of the community." *Id.* The ultimate accommodation decision was left to each employee's assigned department. *Id.*, Ex. C; FAC ¶ 62.

**D. Rolovich Requests a Religious Exemption and Accommodation**

In January 2020, WSU hired Rolovich as its head football coach. FAC ¶ 11. In May 2021, Rolovich informed Chun that he did not plan to become vaccinated against COVID-19. *Id.* ¶ 31. Rolovich claims to have had multiple "reasons for refusing to receive a COVID vaccine"—"religious, personal, and scientific." *Id.* ¶ 30. Yet the Complaint grounds Rolovich's refusal in pseudo-scientific

---

[9] The Complaint incorporates Exhibits A through K to the Pekelis Declaration by reference. *See* FAC ¶¶ 5, 60 & n.4, 61 & n.5, 62–70, 91–93; Pekelis Decl. ¶¶ 3–13.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

arguments. *See, e.g.*, *id.* ¶ 57 (citing his concerns with "potential risks" in taking what he calls an "experimental vaccine"); *id.* ¶¶ 50–56 (suggesting that Pfizer vaccine approved by FDA is biologically distinct from Pfizer vaccine authorized for emergency use). In contrast, the Complaint contains strikingly few (and vague) references to Rolovich's religious beliefs. He cryptically alleges that, at some point during "summer of 2021," he "discerned that it would violate his conscience to receive any available COVID-19 vaccine," and that, as a "practicing Catholic," he is "morally obliged to obey his conscience." *Id.* ¶¶ 24, 25, 28. But the Complaint nowhere explains how Rolovich's religious beliefs actually prevented him from being vaccinated against COVID-19.

Rolovich never mentioned a religious objection to WSU before August 19, 2021, when he first asked Chun and Deputy Athletics Director Bryan Blair about WSU's religious exemption process. *Id.* ¶ 41. Rolovich does not allege that he told Chun and Blair the nature of any supposed religious objection at that August 19 meeting (or at any point thereafter). On September 28—over a month after the August 19 meeting and just six days before the October 4 deadline—Rolovich finally sent a request for a religious exemption and accommodation to HRS. *Id.* ¶ 63.

The first-step panel determined that, based only on its blind review of Rolovich's request form, he had stated a "sincerely held religious belief" preventing him from being vaccinated against COVID-19. *Id.* ¶ 64. HRS notified Chun in an email on October 6, 2022, instructing the Athletics Department (the Department) "to determine if the employee is able to perform essential functions of the position and meet the COVID-19 safety measures consistent with the recommendations of the state and protect the health and safety of the WSU community." Pekelis Decl., Ex.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

C at 25. HRS suggested various "terms and conditions" for potential accommodation, such as requiring Rolovich to mask and "distance from others on WSU property." *Id.* HRS asked Chun to "contact the HRS Exemptions team . . . to let us know" if "[y]ou have no concern with this request," "[i]f you are **NOT** able to accommodate this request with the above recommendations," or "[i]f you have any questions or would like to meet to discuss further." *Id.* at 26.

### E. The Department Determines It Cannot Accommodate Rolovich

On October 13, 2021, the Department submitted two memos to HRS. FAC ¶¶ 66–67; Pekelis Decl., Exs. D–E. The first memo concluded that, by remaining unvaccinated—regardless of the reason—Rolovich "would not be able to perform the essential functions of his job" with the suggested accommodations, as it "would create an undue hardship on the . . . Department and WSU as a whole." Pekelis Decl., Ex. D at 28. The memo noted that his "[c]oaching duties require close contact with student-athletes as well as other Department personnel and the public." *Id.* at 30. Without being vaccinated, Rolovich was unable to safely (or legally) perform many of the head football coach's core duties at that point in the pandemic, such as to (1) "recruit at a Pac-12 level due to restrictions placed on unvaccinated visitors by various states, counties and school districts"; (2) "entertain official recruit visitors to WSU's campus while masked and social distanced"; (3) "attend[] individual position meetings"; (4) "safely engage one-on-one with players or assistant coaches"; and (5) "fulfill media and fundraising obligations," such as the "Pac-12 Football Media Day in Los Angeles," the "WSU Football Coaches Show," "pep rallies," and "live donor meetings." *Id.* at 28–30. The Department also expressed "concerns regarding [Rolovich's] ability to comply with" a face-covering requirement, noting that he had

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"frequently removed [his] mask to coach" while players and other coaches were "in close proximity." *Id.* at 30.

The second memo countered HRS's "initial conclusion that Rolovich . . . demonstrate[d] a sincerely held religious belief against being vaccinated for COVID-19." *Id.*, Ex. E at 32. The Department noted that Rolovich had repeatedly "made it clear to Pat Chun . . . and many [others] . . . that he was unwilling to take the vaccine based on his independent research," which led Rolovich to conclude that the vaccine was "not safe" and "would negatively impact his mortality." *Id.* Rolovich had also "been vocal and consistent in his opinions and skepticisms about the COVID-19 virus and the full nature of the public health emergency," asserting that the "government[,] and therefore the vaccine[,] could not be trusted." *Id.* It was only after the Proclamation—and after Rolovich "was unable to secure the necessary documentation" to support a "medical exemption"—that he first "mentioned religion in reference to seeking an exemption." *Id.* at 32–33. The Department recommended "re-evaluation of [Rolovich's] claimed sincerely held religious belief." *Id.* at 33.

To assist the Department in its accommodation decision, WSU Environmental Health & Safety ("EH&S") provided a memo assessing the "reasonable and necessary interventions and countermeasures to ensure the safety of the employee and others the employee may be in contact with." Pekelis Decl., Ex. F at 35. EH&S's memo listed four pages of interventions, including maintaining at least six feet of distance when possible, wearing a mask in all WSU facilities and an N95 respirator whenever within six feet of others for longer than ten minutes, and renting additional buses or booking additional flights. *Id.* at 39–42. EH&S noted that its role was *not* to "determine whether these interventions and countermeasures fundamentally alter

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the employee's job and cannot be accommodated." *Id.* at 35.

The Department responded to EH&S that it "remained concerned that [Rolovich] cannot safely and effectively perform his assigned duties and that accommodation in these circumstances would create an undue hardship for WSU Athletics." *Id.*, Ex. G at 44. The Department observed that "[f]requent close physical proximity to and contact with others is an inherent part of coaching" and that social distancing is "exceedingly difficult on buses, and could require that a coach travel separately in between airports, hotels, and stadiums," which is "not practical" and "creates a financial burden." *Id.* Furthermore, "[a]lmost all recruiting travel is done via commercial flights"—where social distancing is impossible—and coaches "directly enter recruit homes, high schools or other training facilities." *Id.*

### F. WSU Denies Rolovich's Request and Begins the Separation Process

On October 18, 2021, HRS informed Rolovich by email that WSU had denied his request for an accommodation. FAC ¶ 90; Pekelis Decl., Ex. H at 47. The email stated: "[b]ased upon the nature of [the] head coaching responsibilities and core job functions and activities, the University has determined [Rolovich] cannot safely and effectively do [his] job without undue hardship to the University." Pekelis Decl., Ex. H at 47. HRS also noted that, due to Rolovich's "prior statements to WSU staff and others regarding vaccination" and "the timing of [his] request for a religious accommodation, the University questions the assertion that [his] sincerely held religious views conflict with the University's vaccine requirement." *Id.*

Under Rolovich's employment agreement (the Agreement), termination "without cause" entitled Rolovich to liquidated damages, while termination "for just cause" did not. ECF No. 1-1 at 43. The Agreement gives the term "Just Cause" its

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"normally understood meaning in employment contracts." *Id.* at 41. It also lists various non-exclusive "examples," including "[a]ny act of misconduct by Employee, including . . . an act of dishonesty . . . [or] insubordination, or . . . endangering others"; "[a]n intentional or major violation . . . of any law, rule, [or] regulation . . . which may in the reasonable judgment of the University reflect adversely upon the University or its athletic program"; and "Conduct of Employee seriously prejudicial to the best interests of the University or its athletic program." *Id.* at 41–42.

In a meeting on October 18, 2021, Chun provided Rolovich with a "Written Notice of Intent to Terminate for Just Cause." FAC ¶ 93. The notice explained that Rolovich's "decision to forego a COVID-19 vaccination has impacted [his] ability" to perform his contractual duties for a variety of reasons, including his inability to attend fundraising and media events, limited engagement with players and assistant coaches, negative impact on recruiting, and "poor planning, lack of communication, and a void in leadership." Pekelis Decl., Ex. I at 51–52.

## G.  WSU Denies Rolovich's Appeal and Terminates His Employment

Rolovich challenged Chun's decision through the process set out in the Agreement—first in a November 2, 2021, letter from his attorney to Chun, and then in an appeal to University President Kirk Schulz. FAC ¶ 5; Pekelis Decl., Exs. J–K. Both Chun and Schulz denied Rolovich's appeals. FAC ¶ 5. In Schulz's denial letter, he explained that because Rolovich had not been vaccinated against COVID-19 nor received an accommodation, under the Proclamation he was "no longer eligible to engage in work for the University"—a fact that, "by itself, provides just cause for termination under the Agreement." Pekelis Decl., Ex. K at 61–62. Schulz further found that Rolovich had "been limited in [his] ability to fully perform certain

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

essential job duties," resulting in "contract violations" such as "conduct seriously prejudicial to the best interests of the University." *Id.* at 62. Schulz agreed with Chun that "maintaining the prior status quo would result in an undue hardship on the University by creating unnecessary risk to the safety of its students and staff, . . . members of the press, potential athletic recruits, donors, and [others]," "given the myriad duties and close contacts necessary to perform [Rolovich's] job duties." *Id.* WSU terminated Rolovich's employment for just cause effective December 6. FAC ¶ 5.

## H. Rolovich's Lawsuit

Rolovich filed (but did not serve) his original complaint in Whitman County Superior Court on November 14, 2022, naming WSU, Chun, and the Governor as Defendants. ECF No. 1-1 at 4. On December 9, Rolovich filed and served the FAC. *Id.* at 73. It contains seven causes of action, six of which are against all three Defendants: (1) breach of contract and the implied covenant of good faith and fair dealing; (2) religious discrimination under the WLAD; (3) a damages claim under article 1, section 11 of the Washington Constitution; (4) religious discrimination under Title VII; (5) a 42 U.S.C. § 1983 claim against Chun only; (6) a § 1983 claim against all Defendants; and (7) a federal due process claim. FAC ¶¶ 98–149.[10]

On December 14, 2022, Defendants removed the case to federal court. ECF No. 1. Rolovich filed a motion to remand on January 17, 2023, ECF No. 12, which this Court denied on March 8, ECF No. 16.

---

[10] Although the unserved original complaint contained a state-law wage withholding claim, the FAC omits this claim. *Compare* ECF No. 1-1 at 29, *with id.* at 95–102.

WSU DEFENDANTS' MOTION TO DISMISS - 12
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# III. ARGUMENT

## A. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on the motion, "courts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. at 322.

The Court may take notice of "legislative facts" in deciding a Rule 12(b)(6) motion, particularly "when construing or applying the Constitution" or "statutes." *Hightower v. City & Cnty. of S.F.*, No. C-12-5841 EMC, 2013 WL 361115, at *3 (N.D. Cal. Jan. 29, 2013) (cleaned up). Whether a complaint states a claim for relief "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (cleaned up). Dismissal may be based on either "the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "Leave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile," such as when a claim "fails as a matter of law." *Gamble v. Pac. NW Reg'l Council of Carpenters*, No. 2:14-cv-455RSM, 2015 WL 402782, at *2, *7 (W.D. Wash. Jan. 29, 2015) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)).

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## B.   The Complaint Fails to State a Title VII Claim (Count IV)

### 1.   Rolovich has no Title VII claim against Chun

Any Title VII claim against Chun should be dismissed with prejudice because individual employees cannot be liable under the statute. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); *Magden v. Easterday Farms*, No. 2:16-CV-00068-JLQ, 2017 WL 1731705, at *5 (E.D. Wash. May 3, 2017) (collecting cases).

### 2.   The Complaint fails to state a Title VII claim against WSU

#### a.   Accommodating Rolovich would have imposed an undue hardship

As Rolovich acknowledges, WSU denied his accommodation request because it found that an unvaccinated head football coach "could not 'safely and effectively do [his] job without undue hardship to the University.'" FAC ¶ 92. The "undue hardship" defense is a complete defense to a Title VII failure-to-accommodate claim. *See* 42 U.S.C. § 2000e(j). An accommodation causes "undue hardship" if it would "result[] in 'more than a *de minimis* cost' to the employer." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67 (1986) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)).[11] This "could include additional costs in the form of lost efficiency" or "more than a de minimis impact on coworkers." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (cleaned up).

Numerous federal courts have held that accommodating employees' religiously based opposition to COVID-19 vaccines would impose undue hardships on employers in a wide range of sectors. *See, e.g.*, *Does 1-6 v. Mills*, 16 F.4th 20, 36

---

[11] The Supreme Court has accepted a case in which it has been asked to reconsider the *Hardison* standard. *See Groff v. DeJoy*, 143 S. Ct. 646 (2023) (granting cert).

WSU DEFENDANTS' MOTION TO DISMISS - 14
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(1st Cir. 2021) (denying preliminary injunction because accommodating healthcare workers by allowing them to remain unvaccinated against COVID-19 would cause employer to suffer undue hardship); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292, *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (per curiam) (same); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309–10 (D. Haw. 2022) (same for airline employees); *Brox v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth.*, 590 F. Supp. 3d 359, 366–67 (D. Mass. 2022) (same for ferry workers). At the time WSU denied Rolovich's accommodation request, unvaccinated people were five times more likely to contract COVID-19—and ten times more likely to die from it—than those who were fully vaccinated. *Supra* Section II.B. Allowing the head football coach to remain unvaccinated would have increased the risk of exposing others with whom he came into close contact— including WSU staff and student-athletes—to the virus, "which is obviously a significant hardship." *Does 1-2 v. Hochul*, --- F. Supp. 3d ----, No. 21-CV-5067(AMD) (TAM), 2022 WL 4637843, at *16 (E.D.N.Y. Sept. 30, 2022) (dismissing Title VII claim with prejudice because accommodating plaintiff's religious beliefs opposing COVID-19 vaccination would pose undue hardship); *see also D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (same); *Kane v. de Blasio*, --- F. Supp. 3d ----, No. 21 CIV. 7863 (NRB), 2022 WL 3701183, at *13 (S.D.N.Y. Aug. 26, 2022) (same); *Lowe v. Mills*, No. 1:21-CV-00242-JDL, 2022 WL 3542187, at *9–10 (D. Me. Aug. 18, 2022) (same). Accommodating Rolovich would also have increased travel costs, harmed recruiting and fundraising, and damaged WSU's reputation and donor commitments—which also represent

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

substantial burdens. FAC ¶ 70; Pekelis Decl., Exs. D, G; *Together Employees v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 435 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (rejecting Title VII challenge to vaccine policy and noting "[r]eputational effects on an employer can also impose an undue hardship") (citing *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 136 (1st Cir. 2004)).

For those reasons, Rolovich's Title VII claim fails as a matter of law under the undue hardship defense, and the Court should dismiss the claim with prejudice.

### b. Rolovich fails to identify any religious beliefs against vaccination

Rolovich's Title VII claim against WSU fails for a separate, independent reason: the Complaint does not allege facts establishing that Rolovich's opposition to the COVID-19 vaccines stemmed from beliefs that were religious in nature. Instead, the Complaint couches Rolovich's objection in his own pseudo-scientific concerns over the "potential risks of taking" what he calls an "experimental vaccine." FAC ¶ 57. Title VII affords no protection to such purely secular opinions.

To state a Title VII religious discrimination claim on a failure-to-accommodate theory, "a plaintiff must plausibly allege that '(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer . . . subjected him to an adverse employment action because of his inability to fulfill the job requirement.'" *Grubbs v. Arizona*, No. CV-20-02369-PHX-DJH, 2021 WL 4552419, at *4 (D. Ariz. Oct. 5, 2021) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004)). Here, Rolovich fails to allege the most basic

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

element of a religious discrimination claim: a bona fide *religious* belief.[12]

Instead, Rolovich alleges in a conclusory fashion that "it would violate his conscience to receive any available COVID-19 vaccine" and that he "holds sincere religious beliefs that precluded him from receiving any of the COVID-19 vaccines available during the times relevant to this complaint." FAC ¶¶ 24, 121. But at no point does he allege *what* his beliefs are, *how* those beliefs are linked to his religion, or *why* those beliefs precluded him from being vaccinated. These omissions are fatal to his Title VII claim. *See, e.g.*, *Turner v. Ass'n of Apt. Owners of Wailea Point Vill.*, 739 F. App'x 874, 877 (9th Cir. 2018) (affirming grant of summary judgment on Title VII claim because plaintiff could not establish actual conflict between religious belief and work requirement); *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal where plaintiff had "not alleged any particulars about her religion that would even allow an inference that she was discriminated against on account of her religion"); *Leake v. Raytheon Techs. Corp.*,

_____

[12] The Complaint's only hint of a religious belief is the allegation that Rolovich "was uncomfortable because he did not know how WSU would react to him sharing his religious opposition to medical research based on aborted fetal tissue, given that WSU professors have in the past publicly defended such research." *Id.* ¶ 42. The Complaint does not connect this statement to vaccines in general or any COVID-19 vaccine in particular, nor allege that such "opposition" was what *actually* motivated Rolovich's vaccine objection. Instead, this allegation attempts to explain why Rolovich supposedly did not mention religion at all to WSU until extremely late in the process—not the nature of his purported religious objection.

WSU DEFENDANTS' MOTION TO DISMISS - 17
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023) (dismissing Title VII challenge to COVID-19 vaccination policy where "Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were"); *Addison v. Amazon.com, Inc.*, No. CV 22-01071 (FLW), 2022 WL 2816946, at *5 (D.N.J. July 19, 2022) (dismissing Title VII claim because "Plaintiff fails to provide any additional information about the nature of her beliefs, and therefore, she cannot establish that she held sincere religious beliefs").

The leading Title VII case on vaccination requirements is directly on point. In it, the Third Circuit affirmed the dismissal of a former hospital employee's Title VII lawsuit because it determined his opposition to flu vaccination—which the hospital required of its employees—was not "religious in nature." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 494 (3d Cir. 2017). Fallon believed that "if he yielded to coercion and consented to the hospital['s] mandatory policy, he would violate his conscience as to what is right and what is wrong." *Id.* at 492. This objection did not constitute a religious belief, which must (1) "address[] fundamental and ultimate questions having to do with deep and imponderable matters," (2) be "comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching," and (3) be accompanied by "certain formal and external signs" of religion. *Id.* at 491 (cleaned up).[13] Fallon's "beliefs do not occupy a place in his life similar to that occupied by a more traditional faith," his "objection to vaccination is . . . not religious and not protected by Title VII," so the court dismissed his claim. *Id.* at 492.

_____

[13] The Ninth Circuit has adopted this definition in the Establishment Clause context. *See, e.g.*, *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229–30 (9th Cir. 1996).

WSU DEFENDANTS' MOTION TO DISMISS - 18
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Rolovich's alleged religious objection is indistinguishable from Fallon's. Rolovich alleges that it "would violate his conscience to receive . . . [the] vaccine," FAC ¶ 24, just as Fallon claimed "he must follow his conscience and refuse the influenza vaccine," *Fallon*, 877 F.3d at 492. And like Fallon, Rolovich fails to connect this "isolated moral teaching"—namely, vaccine opposition—to a "comprehensive system of beliefs about fundamental or ultimate matters." *Id.*

The only real difference in Rolovich's framing of his anti-vaccination belief is his assertion that "a Catholic is morally obliged to obey his conscience." FAC ¶ 28. This additional gloss is irrelevant. Whatever his belief system, a Title VII plaintiff must do more than make a conclusory allegation that his objection is based on "conscience." He must provide a short and plain statement as to *how* that objection is actually "religious in nature," as opposed to "'essentially political, sociological, or philosophical.'" *Fallon*, 877 F.3d at 490 (quoting *United States v. Seeger*, 380 U.S. 163, 165 (1965)); Fed. R. Civ. P. 8(a)(2). Were the law otherwise, a plaintiff could state a Title VII religious discrimination claim simply by asserting that his "conscience" forbids compliance with any generally applicable workplace policy, with no further elaboration or explanation—and "in effect to permit every citizen to become a law unto himself." *Emp't Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (cleaned up).

Recent cases concerning COVID-19 vaccine mandates support this sensible rule. *See, e.g., Finkbeiner v. Geisinger Clinic*, --- F. Supp. 3d ----, No. 4:21-CV-01903, 2022 WL 3702004, at *2–4 (M.D. Pa. Aug. 26, 2022) (plaintiff's allegation that she was "a Christian and hold[s] a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me" had

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"fail[ed] to establish sincere religious opposition" because it was "an 'isolated moral teaching' . . . not a comprehensive system of beliefs about fundamental or ultimate matters,'" and that indulging "'God given right to make [her] own choices'" would "amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted . . . obligations.'") (quoting *Fallon*, 877 F.3d at 492; *Africa v. Pennsylvania*, 662 F.2d 1025, 1030–31 (3d Cir. 1981)); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 362392, at *1-3, *7-8 (E.D. Pa. Jan. 23, 2023) (plaintiff's allegation that "'her religious beliefs forbid[] insertion of an unwanted foreign object into her body,'" was insufficient to state religious objection, but instead indicated that she "challenge[d] Defendant's *factual* and *scientific* basis for imposing the testing requirement," and "suggest[ed] the basis for Plaintiff's belief is 'political, sociological, or philosophical' – and not religious.") (quoting *Fallon*, 877 F.3d at 490); *Brox*, 590 F. Supp. 3d at 366 n.7 (finding "idiosyncratic" and without "grounding in religious practice" plaintiff's stated reasons for opposing vaccine mandate, including that "Jesus tells me that it is unwise to put the COVID vaccine into my body, his creation" and "I believe my God will guide me and protect me and [God] has told me not to get the vaccine at this time").

Rolovich's Complaint describes his vaccine objection in terms strikingly similar to those plaintiffs' objections. Rolovich's asserted belief that he "'must always obey the certain judgment of his conscience,'" FAC ¶ 28, essentially seeks "a blanket privilege" and a "limitless excuse for avoiding all unwanted obligations," *Finkbeiner*, 2022 WL 3702004, at *4 (cleaned up). And Rolovich's own statements (such as his concerns over "the potential risks of taking [an] experimental vaccine," FAC ¶ 57), "only reinforces that [his] opposition stems from [his] medical beliefs,"

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Finkbeiner*, 2022 WL 3702004, at \*4, and "suggests that the basis for [his] belief is political, sociological, or philosophical – and not religious," *Blackwell*, 2023 WL 362392, at \*8; *see also Egelkrout v. Aspirus, Inc.*, No. 22-CV-118-BBC, 2022 WL 2833961, at \*3 (W.D. Wis. July 20, 2022) ("[P]laintiff makes no claim that the testing requirement conflicted with her genuinely held religious beliefs. Instead, plaintiff opposed the testing for personal and medical reasons . . . .").

In sum, Rolovich's Complaint fails to spell out his religious objection with sufficient clarity to satisfy Rule 8(a)(2). It is not enough for Rolovich to vaguely reference his exemption request form (which he does not attach or quote), for the operative facts must be stated in the Complaint itself. *Crayon v. Asuncion*, No. CV 20-0192-JFW (AS), 2020 WL 4904866, at \*2 n.6 (C.D. Cal. June 26, 2020) ("[T]o state a claim, Plaintiff cannot rely simply on facts contained within exhibits and attachments; he must instead allege the essential facts within the body of the complaint itself, and thus provide fair notice to Defendants of the claims against them") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007)). As a practical matter, Defendants cannot test the sincerity of Rolovich's claimed religious beliefs if he does not disclose them in his initial pleading; otherwise, they could become a "moving target" throughout litigation. *See Love v. N.J. Dep't of Corr.*, No. CIV.A. 10-1714 (GEB), 2011 WL 345964, at \*12 (D.N.J. Jan. 31, 2011) (expressing difficulty in determining sincerity of plaintiff's "unique religious beliefs" that kept evolving such that the court could not discern them "with any degree of certainty [or] predict with any reasonable approximation"). As the only concrete beliefs alleged in the Complaint supporting Rolovich's vaccine opposition are not religious in nature, his Title VII claim fails as a matter of law and must be dismissed.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## C. The Complaint Fails to State a WLAD Claim (Count II)

Rolovich's WLAD claim fails for the same reasons as his Title VII claim. The elements of a religious discrimination claim are the same under WLAD as Title VII, and Washington courts look to federal cases to guide their interpretations of WLAD. *See Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 203 (Wash. 2014); *Black v. Grant Cnty. Pub. Util. Dist.*, No. 2:17-CV-365-RMP, 2019 WL 2617236, at *7 (E.D. Wash. June 26, 2019), *aff'd in part and rev'd in part on other grounds*, 820 F. App'x 547 (9th Cir. 2020). Just as with Title VII, WLAD requires the plaintiff to establish a sincerely held and bona fide religious belief that conflicts with a requirement of employment. *See Kumar*, 325 P.3d at 203 ("a plaintiff establishes a prima facie claim of failure to accommodate religious practices by showing that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment."). As described above, Rolovich has not plausibly alleged that he holds a truly *religious* belief, that this belief conflicted with a job requirement, and that the belief was the basis for his separation. Accordingly, his WLAD claim also fails as a matter of law and should be dismissed.

## D. Rolovich's § 1983 Claims Must Be Dismissed (Counts V and VI)

The Complaint pleads two separate claims under 42 U.S.C. § 1983—one against all Defendants invoking the Free Exercise Clause (Count VI), FAC ¶¶ 140–46, and the other against Defendant Chun invoking free exercise and due process rights (Count V), *id.* ¶¶ 130–39. Both of these claims fail as a matter of law.

As a threshold matter, § 1983 "creates no substantive rights; it merely

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Specifically, "Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). As a predicate to § 1983 liability, each defendant must be a "person" acting "under color of [law]," 42 U.S.C. § 1983, and must also "integrally participate in the unlawful [conduct]," *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020). Thus, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Under these principles, Rolovich's § 1983 claims fail as to each WSU Defendant, for three reasons. First, the claim against WSU must be dismissed because it is not a "person" under § 1983. Second, the Complaint states no claim against Chun because it does not plausibly allege his personal involvement in any constitutional violation. Third, even if there were such allegations, the claims against Chun must be dismissed because he has qualified immunity.

## 1. WSU cannot be sued under § 1983

No § 1983 claim may lie against WSU because it is statutorily exempt from liability. A state, its agencies, and its officials who are sued in their official capacities are not "persons" for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). A "state university is an arm of the state entitled to Eleventh Amendment immunity," and thus "not [a] 'person[] within the meaning of § 1983.'" *Riser v. WSU*, No. 2:18-CV-0119-TOR, 2018 WL 4955206, at *2 (E.D. Wash. Oct.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

12, 2018) (quoting *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007)). For that reason, this Court recently dismissed a similar § 1983 claim against WSU as "futile." *Doe v. Elson S. Floyd Coll. of Med. at WSU*, No. 2:20-CV-00145-SMJ, 2020 WL 11036961, at *3 (E.D. Wash. Dec. 30, 2020). The Court should do the same here and dismiss Rolovich's § 1983 claim against WSU with prejudice.

### 2. Rolovich fails to state a § 1983 claim against Chun

Rolovich also fails to plausibly allege facts supporting § 1983 claims against Chun. In Count V, which asserts a § 1983 claim against Chun only, Rolovich pleads nothing close to the required level of detail under *Iqbal* and *Twombly* to make out a viable claim. FAC ¶¶ 130–39. A § 1983 plaintiff must allege both that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). The complaint must set forth the "specific injury-causing act or omission of" each individual defendant. *Holt v. McDonnell*, No. CV 15-9632 R(JC), 2016 WL 7217572, at *4 (C.D. Cal. Dec. 12, 2016); *see also Brown v. Morgan*, No. C16-5975 RBL-TLF, 2017 WL 3454572, at *2 (W.D. Wash. Aug. 11, 2017) ("A plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976)). "Vague and conclusory allegations of official participation in a civil rights violation are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

WSU DEFENDANTS' MOTION TO DISMISS - 24
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Count V against Chun contains no specific factual allegations—only a threadbare recitation of the rights asserted (free exercise and due process). FAC ¶¶ 134–37. Instead of identifying the specific conduct by Chun that allegedly infringed these rights, Rolovich argues vaguely that Chun "acted with willful malice, and/or intentionally and in gross disregard of Mr. Rolovich's constitutional rights, and/or in reckless disregard of Mr. Rolovich's constitutional rights." *Id.* ¶ 138. Rolovich's failure to identify what these allegedly unconstitutional "act[s]" were requires dismissal of Count V. *See Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (to state § 1983 claim, complaint "must isolate the allegedly unconstitutional acts of each defendant; otherwise the complaint does not provide adequate notice as to the nature of the claims against each") (cleaned up).

Count VI, Rolovich's § 1983 claim against all Defendants, is equally deficient. It alleges no Chun-specific conduct, focusing instead on the constitutionality of the Proclamation itself and its purported "creation of a formal mechanism for granting exemptions." FAC ¶¶ 142–43. Rolovich fails to single out any acts Chun personally took in violation of the Due Process Clause or the Free Exercise Clause. The Complaint thus fails to state a § 1983 claim against Chun.[14]

---

[14] Although this claim asserts that all Defendants "terminated him . . . because Mr. Rolovich had informed Defendants that religious convictions precluded him from receiving a COVID-19 vaccine," FAC ¶ 144, this conclusion is not supported by the facts alleged in the Complaint—and the documents it incorporates by reference—which demonstrate that Rolovich was fired because he was unvaccinated and WSU determined he could not reasonably be accommodated without undue

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### 3. Chun has qualified immunity

Even if the Complaint included allegations against Chun sufficient to state a claim (it does not), the § 1983 claim against him is still barred because he is entitled to qualified immunity. A public official sued in an individual capacity may assert a defense based on qualified immunity. *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015).[15] With qualified immunity, a defendant has immunity from suit provided his conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the official's conduct violated a constitutional right, and (2) whether the allegedly violated right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Once a defendant raises this defense, "the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). The qualified immunity

_____

hardship to WSU. *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts need not accept as true allegations that "contradict matters properly subject to judicial notice or by exhibit" or are "conclusory, unwarranted deductions of fact, or unreasonable inferences"; "a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims.").

[15] The Complaint makes clear that Chun is sued "in his individual capacity only," FAC ¶ 13, though it simultaneously asserts that "[a]t all times relevant to this complaint, Patrick Chun was acting as an agent of WSU," *id.*

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

issue "should be decided as early as possible in litigation—preferably before discovery—as it is a complete immunity from suit, not solely a defense to liability." *Lilly v. Univ. of Cal.-San Diego*, No. 21-CV-1703 TWR (MSB), 2022 WL 11337682, at *11 (S.D. Cal. Oct. 19, 2022) (citing *Pearson*, 555 U.S. at 231–32).

Looking beyond Count V's empty and generic recitations, the descriptions of Chun's conduct largely fall into three categories: (1) Chun's meetings over several months in 2021 with Rolovich regarding his vaccination status, FAC ¶¶ 30–46; (2) Chun's involvement in reviewing Rolovich's request for an accommodation, *id.* ¶¶ 64–70; and (3) Chun's involvement in the decisions to deny Rolovich's request for an accommodation and terminate his employment for just cause, *id.* ¶¶ 90–96.[16] Even taking all allegations as true, and importing them into his § 1983 claim, Rolovich's Complaint fails both prongs of the qualified immunity analysis.

### a.    Rolovich does not plead a constitutional violation by Chun

Rolovich's Complaint fails to show how any of the alleged instances of Chun's conduct violated either the Free Exercise Clause or the Due Process Clause.

### i.  Chun did not violate Rolovich's free exercise rights

As to free exercise, Rolovich fails to show how the action of any defendant, including Chun, amounted to unconstitutional "discriminat[ion] . . . because of [Rolovich's] religious beliefs." FAC ¶ 134. "Where the claim is invidious discrimination in contravention of the First . . . Amendment[]," the Supreme Court's "decisions make clear that the plaintiff must plead and prove that the defendant acted

---

[16] Rolovich also attacks Chun for alleged violations of WSU's COVID-19 protocols, which do not appear to relate to Rolovich in any way. *See* FAC ¶¶ 71–75.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

with discriminatory purpose." *Iqbal*, 556 U.S. at 676 (citing, inter alia, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540–41 (1993) (opinion of Kennedy, J.)). Such "purposeful discrimination" requires that a "decisionmaker[] undertak[e] a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* at 676–77 (cleaned up). It follows that, to state a claim against Chun for a free exercise violation, Rolovich "must plead sufficient factual matter to show" Chun acted "not for a neutral . . . reason but for the purpose of discriminating on account of . . . [Rolovich's] religion." *Id.* at 677.

As explained above in the context of Title VII and WLAD, Rolovich does not plausibly allege facts showing that Chun acted against him *because of* his religious beliefs. *See supra* Section III.B. Instead, the Complaint demonstrates that Rolovich was fired not because of his religion, but because he was unvaccinated against COVID-19, which was a condition for continued employment, and because the Department determined that accommodating him would pose an undue hardship given his job duties as head football coach. None of those facts remotely suggests intentional discrimination on the basis of Rolovich's religion. *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2022 WL 1243662, at *8 (E.D. Wash. Apr. 27, 2022) (dismissing Title VII and § 1983 claims because "there is no indication that Plaintiffs faced adverse employment decisions due to their sincerely held religious beliefs rather than a failure to comply with the Proclamation").

Nor does any Chun-specific allegation suggest that religious animus motivated his actions. For instance, the Complaint alleges that Chun "made a number of statements" that "demonstrated his hostility toward Mr. Rolovich's expressed religious, personal, and scientific reasons for refusing to receive a COVID vaccine."

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FAC ¶ 30. But it fails to identify any actions Chun took that reflected "hostility" to Rolovich's "religious reasons," as opposed to Chun's frustration at Rolovich's longstanding refusal to get vaccinated. Notably, the Complaint does not even allege that Chun was ever aware of whatever "religious reasons" Rolovich had for opposing the vaccine when he allegedly formed a "predetermination" to terminate him if he did not get vaccinated. FAC ¶ 110. Quite the opposite: Rolovich expressly admits that before August 19, 2021, he "had refrained from bringing his religious beliefs into his conversations with Mr. Chun about COVID vaccines." FAC ¶ 41. Nothing in the Complaint supports an inference of any "discriminatory purpose" on the part of Chun, which is a prerequisite to a claim of "invidious discrimination" under the Free Exercise Clause. *Iqbal*, 556 U.S. at 676.[17]

### ii. Chun did not violate Rolovich's due process rights

The Complaint also fails to tie Chun's actions to any plausible due process violation. As explained below, Rolovich has no viable due process claim against the WSU Defendants. *See infra* Section III.E. But even if he had one, Chun's individual actions would not establish any violation. For instance, even if Chun—as Rolovich's supervisor—"inserted" himself into the accommodation determination, FAC at 16, it would not violate the Due Process Clause, which "does not require a hearing before a particular decision maker." *Hunter v. Sup. Ct. of N.J.*, 951 F. Supp. 1161, 1181

---

[17] As this Court has already held, an employer's neutral and generally applicable vaccine requirement is not a free exercise violation. *See, e.g.*, *Bacon v. Woodward*, No. 2:21-CV-0296-TOR, 2021 WL 5183059, at *4 (E.D. Wash. Nov. 8, 2021). Logically, nor is Chun's role in implementing such a requirement a violation.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(D.N.J. 1996), *aff'd*, 118 F.3d 1575 (3d Cir. 1997) (unreported) (citing *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 152 (1941)). To the extent Rolovich's theory is that Chun did not follow WSU's own policies for processing exemption and accommodation requests, his Complaint does not state a cognizable claim. A government official's failure to follow internal administrative policies—or even state statutory or regulatory provisions—does not trigger a due process violation. *See, e.g.*, *Davis v. Scherer*, 468 U.S. 183, 194 & n.12 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) ("state departmental regulations do not establish a federal *constitutional* violation").

In any event, Chun's involvement in the accommodation decision was perfectly consistent with WSU's policies. As Rolovich acknowledges, after the initial blind review of the exemption request, at the second step the employee's "supervisor would determine if the unvaccinated employee would be capable of 'keeping the public safe' and perform his/her job effectively" with a reasonable accommodation. FAC ¶ 62. In other words, it was "for the Athletics Department to decide whether it was 'able to accommodate [Rolovich's] request.'" *Id.* ¶ 65. As the head of the Department, Chun's involvement is neither surprising nor prohibited— and comes nowhere close to a constitutional due process violation.

Nor does the allegation that Chun "improperly influence[d] and interfere[d] with the final decision made in [the] blind review process" finding that Rolovich had a sincerely held religious belief. FAC ¶ 91. Again, Rolovich admits that the ultimate authority on whether to grant an accommodation was the affected department, not

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

EH&S or the blind screening panel. FAC ¶¶ 62, 66. And nothing in WSU's policy forbade Chun from questioning the sincerity of Rolovich's stated religious objections based on information not available to the panel—including Rolovich's prior inconsistent statements to Chun and the last-minute timing of his religious exemption request. *Id.* ¶¶ 45, 67; Pekelis Decl., Ex. E; *see, e.g.*, *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. CV 19-5734, 2022 WL 507479, at *4 (E.D. Pa. Feb. 18, 2022) (because plaintiff's "claimed religious objection to vaccination occurred within a few days of her submitting a request for a religious exemption," court found "the timing of Plaintiff's development of religious issues with vaccination to be suspicious and . . . this timing points to a lack of sincerity in her religious beliefs").

Finally, even if Rolovich could possibly have a cognizable due process interest at stake in the blind review panel's finding (and he does not), he admits that the finding was not actually overturned. Although HRS wrote in its denial letter that "the University *questions* the assertion that [Rolovich's] sincerely held religious views conflict with the University's vaccine requirement," his accommodation request was ultimately denied because the Department found he "could not 'safely and effectively do [his] job without undue hardship to the University." FAC ¶¶ 91, 92 (emphasis added); *see* Pekelis Decl., Ex. H. Whatever "influence" Chun tried to exert on the blind review panel finding, it was not determinative in the Department's denial of Rolovich's accommodation request.

### b.    Chun's conduct violated no clearly established law

Even if Rolovich could link Chun's conduct to a constitutional violation with the required specificity (he can't), Chun would still be entitled to qualified immunity because he did not violate clearly established law. As the Supreme Court has

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"repeatedly" stated, courts are "not to define clearly established law at a high level of generality." *Sheehan*, 575 U.S. at 613 (cleaned up). Instead, "[t]he law must have been clear enough that *every* reasonable official would know he or she was violating the plaintiff's rights." *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (cleaned up). This "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Precedent must "have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017).

Count V does not state with any specificity what "clearly established law" Chun allegedly violated. Instead, it gestures vaguely at Rolovich's "constitutional right to the free exercise of religion, to be free from governmental hostility directed at his religion, and his right to due process and equal protection under the law," without further explanation as to what these rights mean in this context. FAC ¶ 139. This is precisely the sort of "high level of generality" that federal courts have found insufficient to defeat qualified immunity. *See, e.g.*, *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 890 (9th Cir. 2022) (allegation "that the state cannot condition a benefit or impose a penalty based on a person's adherence or non-adherence to a religious belief" was too "general" and "avoid[ed] the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (quotations omitted); *Genas v. State of N.Y. Dep't of Corr. Servs.*, 75 F.3d 825, 830–31 (2d Cir. 1996) (reversing district court's conclusion that "the contours of the right to be free from religious discrimination and an employer's duty

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to make reasonable accommodation for religious observance are clearly defined," which defined the right "at too abstract a level of generality").

No facts alleged anywhere in the Complaint indicate that Chun violated any clearly established law. For instance, Rolovich has no constitutional right to a religious exemption from the Proclamation's generally applicable vaccine requirement (which was a clear condition of employment), or to an accommodation (which WSU determined would have caused an undue hardship given Rolovich's position as head football coach). *See Wise*, 2022 WL 1243662 at *3–6. Instead, the "clearly established law" is just the opposite: the State may establish generally applicable vaccine requirements *without* affording a religious exemption. *Id.*; *see, e.g.*, *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) ("Limitation of the medical exemption in this way serves the primary interest for imposing the mandate—protecting student 'health and safety'—and so does not undermine the District's interests as a religious exemption would.").

Likewise, Chun's involvement in the accommodation decision did not violate clearly established law. Recently, a court considered and rejected a similar challenge to a university's denial of employees' requests for exemptions and accommodations from a vaccination requirement. *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, No. 21-CV-02637-RM-KMT, 2022 WL 4547563, at *6 (D. Colo. Sept. 29, 2022). The court held that qualified immunity protected all supervisor defendants from liability for their roles in the terminations, finding no "clearly established law" that enforcing a vaccine policy violates the First Amendment. *Id.* ("Plaintiffs have not pointed to any Supreme Court or Tenth Circuit authority holding that the First Amendment was ever violated by any vaccination policy."). The same is true here.

WSU DEFENDANTS' MOTION TO DISMISS - 33
Case No. 2:22-cv-00319-TOR

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Next, although Rolovich accuses Chun of "influenc[ing] and interfer[ing] with" either the blind review panel's first-step finding or the accommodation process, FAC ¶ 91, no case law (let alone clearly established law) makes such conduct constitutionally suspect. The Free Exercise Clause did not require WSU or Chun to adhere inflexibly to an initial sincerely-held belief finding based on a committee's "blind review" or to defer to accommodation ideas from external departments like EH&S. Nor does Chun's own involvement in the accommodation process violate any clearly established due process precedent. *See, e.g.*, *Sadid v. Vailas*, 936 F. Supp. 2d 1207, 1216, 1231–32 (D. Idaho 2013) (university president's participation in pre-termination proceeding did not violate clearly established law even where he had been publicly attacked by terminated employee).

Finally, even accepting Rolovich's contention that the Department's accommodation determination was incorrect, *see* FAC ¶¶ 76–89, this would not defeat Chun's qualified immunity. Chun and the Department's determination that Rolovich could not be accommodated was supported by multiple objective justifications, including Rolovich's inability to safely lead practices, conduct fundraising, travel and recruit players, or interface with the media without being vaccinated. FAC ¶¶ 69–70. If that determination were somehow in error, Rolovich still could not show that it was unreasonable in light of the "far-reaching" protections of qualified immunity. *See Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998). The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229. As WSU's Athletics Director making difficult and time-pressured judgments in the midst of the pandemic

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(during the Delta surge), Chun benefits from the "government interest in avoiding unwarranted timidity on the part of those engaged in the public's business." *Filarsky v. Delia*, 566 U.S. 377, 390 (2012); *see Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) ("holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties"); *see also Univ. of Colo.*, 2022 WL 4547563, at *5 ("Given the unprecedented nature and global scope of the Covid-19 pandemic as well as its devastating impacts, the Court finds the allegations in the Complaint do not establish that these Defendants acted unreasonably in light of existing precedent and in the specific context of this case.").

Ultimately, Rolovich can identify no case law—or even established constitutional principles—that defeat Chun's qualified immunity. No reasonable official confronted with the objective circumstances with which Chun was presented would believe that his conduct violated the law (because it did not). Thus, Chun is immune from Rolovich's § 1983 claims, which should be dismissed with prejudice.

### E. The Complaint Fails to State a Due Process Claim

While "due process" is passingly mentioned in the § 1983 claims (Counts V–VI), Count VII alleges standalone procedural due process violations against all Defendants. FAC ¶ 149 (alleging that WSU's policies "granted WSU officials unfettered discretion to disregard the process they created"). This claim fails as a matter of law and should be dismissed with prejudice for multiple reasons.

First, no due process claim lies against WSU for the same reason no § 1983 claim lies against WSU. Claims that state agencies violated the U.S. Constitution must be brought under § 1983. *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914,

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

917 (9th Cir. 2003); *Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992). WSU is not a "person" under § 1983, so it cannot be sued for damages for alleged constitutional violations. *See Lake Tahoe*, 318 F.3d at 918 (construing equal protection claim against state agency under § 1983 and dismissing it).

With respect to Chun, Rolovich's claims also fail. Again, Rolovich's claim here is best construed as another § 1983 claim (since this is the only available avenue), and it fails for many of the same reasons Count V did, including that Chun has qualified immunity. *See supra* subsections III.D.2–3.

Even without those barriers, the Complaint would still not state any viable due process claim against either WSU Defendant. Rolovich had no property interest, for instance, in the religious accommodation he requested but did not receive. To qualify as a constitutionally protected interest, a person must have a "legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see, e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (plaintiffs failed to show a property interest in state-issued certificate). An "abstract need" or a "unilateral expectation" is not enough. *Thornton*, 425 F.3d at 1164. Here, Rolovich was never granted a religious accommodation; at most, the university informed him that it was "considering approving" his request. FAC ¶ 61. As such, he never attained a protected interest in it. The "failure to grant [a plaintiff's requested] accommodations" under the Americans With Disabilities Act does not "amount[] to a sufficient liberty or property interest under the due process clause to give plaintiff a claim." *Bartlett v. N.Y. State Bd. of Law Examiners*, 970 F. Supp. 1094, 1142 (S.D.N.Y. 1997) (Sotomayor, J.), *aff'd in part, vacated in part on other grounds*, 156 F.3d 321 (2d Cir. 1998), *cert. granted, judgment vacated*, 527 U.S.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1031 (1999), *and aff'd in part, vacated in part on other grounds*, 226 F.3d 69 (2d Cir. 2000); *see also Walker v. Newsom*, No. 2:20-cv-2243 TLN AC P, 2022 WL 1190458 at *6 (E.D. Cal. Apr. 21, 2022) (same); *Stamm v. N.Y.C. Transit Auth.*, No. 04-CV-2163 (SLT), 2006 WL 1027142, at *9 (E.D.N.Y. Feb. 7, 2006) (same).

Moreover, even if Rolovich had a protectable interest, the process Rolovich received was constitutionally sufficient. Where, as here, "a policy is generally applicable, employees are not entitled to process above and beyond the notice provided by the enactment and publication of the policy itself." *Wise*, 2022 WL 1243662, at *5 (cleaned up). Here, not only was the Proclamation enacted and published, but WSU specifically notified Rolovich well in advance that it would be implementing the Proclamation. FAC ¶¶ 15, 36, 45. Rolovich had ample opportunity to request an exemption, which he ultimately did at the last minute. His termination became final after two stages of appeal, and was ultimately approved by WSU's president. *Id.* ¶ 5. As of October 18, 2021, the Proclamation's effective date, Rolovich had not taken the vaccine and WSU had denied his requested accommodation. *Id.* ¶ 90. The Proclamation thus prohibited WSU from allowing Rolovich to continue working, and he was accordingly discharged. *Id.* ¶ 93. The process Rolovich received was far more than the "enactment and publication" notice to which he was entitled. *Wise*, 2022 WL 1243662, at *5.

Finally, Rolovich's accusation that WSU officials "disregard[ed] the process they created . . . and, therefore, abridged Mr. Rolovich's right to due process" is inapposite. FAC ¶ 149. As explained above, WSU complied with its own policies and procedures—but even if it had not, that would not constitute a violation of federal due process. *Jacobs v. Clark Cnty. School Dist.*, 526 F.3d 419, 441 (9th Cir.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

2008) (school district did not violate the due process clause by implementing a dress code without following its regulations requiring parental notification); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process."). Lacking any legal basis, Rolovich's procedural due process claim should be dismissed with prejudice.

## F. Rolovich Has No Claim Under the State Constitution (Count III)

Rolovich's vague state constitutional claim appears to be wholly derivative of his other claims, and fails as a matter of law not just for the reasons discussed above, but also because it seeks damages only. *See* FAC ¶¶ 115–18. There is no private right of action for damages under article I, section 11 of the Washington Constitution because Washington does not recognize causes of action for damages based on constitutional violations. *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001). Count III should be dismissed with prejudice.

## G. Rolovich's Contract Claims Must Be Dismissed (Count I)

Finally, Rolovich's claims for breach of contract and breach of the "implied covenant" of good faith and fair dealing fail as to both WSU and Chun. As to Chun, the reason is simple: he is not a party to the Agreement. *See* FAC ¶ 16; ECF 1-1 at 36. Rolovich does not allege that Chun breached the Agreement. *See* FAC ¶¶ 98–111. Nor could he have, for "a breach of contract is actionable only if the contract imposes a duty." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995). With no contractual duties owed by Chun in his individual capacity, the contract claim against him fails as a matter of law. *See, e.g.*, *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *4 (N.D. Cal. Feb. 6, 2007) (dismissing contract claim because "the Complaint reveals that [the

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

defendant] is . . . not a party to the insurance contract"). Similarly, "a claim for breach of the implied covenant of good faith and fair dealing arises where there is an enforceable contract in place between the parties." *Davis Wire Corp. v. Teamsters Loc. Union No. 117*, 152 F. Supp. 3d 1326, 1330 (W.D. Wash. 2015).

Rolovich's contract claim against WSU also must be dismissed. The crux of this claim is the allegation that "WSU breached its contract with Mr. Rolovich because it did not have just cause to terminate" his employment. FAC ¶ 101. The Agreement gives the term "Just Cause" its "normally understood meaning in employment contracts." ECF No. 1-1 at 43. In Washington, a termination for "just cause" is "one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." *Baldwin v. Sisters of Providence in Wash., Inc.*, 769 P.2d 298, 304 (Wash. 1989). As many courts have recognized, "'[j]ust cause is a flexible concept, embodying notions of equity and fairness.'" *Casper v. Securitas Sec. Servs. USA*, No. 57235-1-I, 2007 WL 809933, at *3 (Wash. Ct. App. Mar. 19, 2007) (unpublished) (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1242 (7th Cir. 1997)). And "[w]hether the undisputed facts of a particular case establish just cause is a question of law for the court." *Crider*, 130 F.3d at 1242.

WSU's decision to discharge Rolovich for just cause rested on multiple grounds, at least one of which is undisputed and apparent on the face of the Complaint: as of October 18, 2021, Rolovich was not vaccinated against COVID-19, had not received an exemption and accommodation, and was thus legally prohibited from working at WSU. (And Rolovich was not entitled to an exemption and accommodation under any statutory or constitutional provision. *See supra*

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Sections III.B–F.) As WSU's president explained in denying his appeal, Rolovich was "no longer eligible to engage in work for the University"—which, "by itself, provides just cause for termination under the Agreement." Pekelis Decl., Ex. K at 61–62; *see, e.g.*, *Akers v. Brookdale Univ. Hosp. & Med. Ctr.*, No. CV06-00350(3MC)(VVP), 2006 WL 2355842, at *3 (E.D.N.Y. Aug. 15, 2006) ("It seems axiomatic if an employee fails to fulfill an express, material condition of her employment . . . , that must constitute 'cause' for termination."); *Reynolds v. Pierce Transit*, No. 18881-3-II, 1996 WL 533602, at *6 (Wash. Ct. App. Sept. 20, 1996) (unpublished) (transit agency had "just cause" because plaintiff "could not perform his job as a bus driver"); *Comfort & Fleming Ins. Brokers, Inc. v. Hoxsey*, 613 P.2d 138, 141 (Wash. Ct. App. 1980) ("good cause" termination covers "causes inherent in and related to the qualifications of the employee or a failure to properly perform some essential aspect of the employee's job function") (citations omitted). Nor does Rolovich's conclusory and speculative allegation that WSU acted with nefarious ulterior motives, *see* FAC ¶ 127, salvage his contract claim. *See, e.g.*, *Linden v. X2 Biosystems, Inc.*, No. C17-966 RSM, 2019 WL 13240852, at *3–4 (W.D. Wash. Jan. 25, 2019) (dismissing breach of contract claim because there was "no plausible inference Plaintiffs were terminated without just cause"; "the existence of other *possible* reasons for the termination and the absence of prior precedent does not show that the stated reason was not fair and honest or that Defendants were not acting in good faith in this instance"). For those reasons, the contract claim against WSU must also be dismissed with prejudice.

## IV.   CONCLUSION

The WSU Defendants ask the Court to dismiss the Complaint with prejudice.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DATED this 15th day of March, 2023.

ROBERT W. FERGUSON
Attorney General

*s/  Zachary J. Pekelis*
ZACHARY J. PEKELIS, WSBA #44557
Special Assistant Attorney General
PACIFICA LAW GROUP LLP
1191 2nd Avenue, Suite 2000
Seattle, WA  98101-3404
(206) 245-1700
Zach.Pekelis@PacificaLawGroup.com

SPENCER W. COATES, WSBA #49683
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744
Spencer.Coates@atg.wa.gov


*Attorneys for Defendant Washington State University and Patrick Chun*

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## CERTIFICATE OF SERVICE

On the 15th day of March, 2023, I caused to be served, via ECF electronic service, a true copy of the foregoing Motion to Dismiss upon all counsel registered for e-service.

DATED this 15th day of March, 2023.

_____
Erica Knerr

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750