1  BRIAN FAHLING, WSBA #18894
   Law Office of Brian Fahling
2  8124 NE 166th St
   Kenmore, WA 98028
3  (425) 802-7326

4
   ERIC KNIFFIN
5  Kniffin Law PLLC
   102 S. Tejon St., Suite 1100
6  Colorado Springs, CO 80903
   (719) 212-4391
7

8  ERIC JOB SEESE
   Lewis Roca Rothgerber Christie LLP
9  1601 19th Street, Suite 1000
   Denver, CO 80202
10 (303) 623-9000

11

12                    **UNITED STATES DISTRICT COURT**
                     **EASTERN DISTRICT OF WASHINGTON**
13

14  NICHOLAS ROLOVICH,

15          Plaintiff,                    NO. 2:22-cv-00319

16      v.
                                          **RESPONSE IN OPPOSITION**
17                                        **TO WSU DEFENDANTS'**
    WASHINGTON STATE                      **MOTION TO DISMISS**
18  UNIVERSITY, et al.,

19          Defendants.                   May 11, 2023
                                          With Oral Argument: 11 a.m.
20                                        Courtroom 902

21

22

23

24
    **PLAINTIFF'S RESPONSE IN OPPOSITION TO**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

INTRODUCTION .................................................................................... 1

SUMMARY OF ARGUMENT ...................................................................... 1

FACTS AS PLED BY ROLOVICH ................................................................ 2

    A.   Washington State and WSU React to the COVID Pandemic ......................... 3

    B.   Rolovich's Employment Contract with WSU ................................................. 4

    C.   WSU and Chun's Interacts with Rolovich regarding Vaccination, Demonstrate Coercive Conduct toward Rolovich and his Religious Beliefs ................................................................................................ 5

    D.   WSU Establishes Process for Evaluating Religious Exemption Requests ...................................................................................... 7

    E.   Rolovich Submits, and WSU Evaluates, His Application for Religious Exemption ..................................................................... 8

    F.   WSU Confirms its Decisions through Rolovich's Administrative Appeal ............................................................................. 9

STANDARD OF REVIEW ......................................................................... 9

ARGUMENT .......................................................................................... 10

I.   Rolovich has adequately pled that WSU breached his employment contract. .... 10

    A.   Whether Defendants had "just cause" to terminate Rolovich is a question of fact not amenable to a motion to dismiss. ................................. 11

    B.   Rolovich has adequately pled his contract claims. ....................................... 12

    C.   Rolovich has sufficiently pled that a sincere religious belief precluded him from complying with Defendants' mandate. ......................................... 15

II.   Rolovich has adequately pled under § 1983 that Chun violated his First Amendment right to free exercise and Fourteenth Amendment right to procedural due process. ........................................................................ 16

    A.   Under the pled allegations, Chun violated Rolovich's clearly-established free exercise rights. ................................................................. 16

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - i

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

B. Under the pled allegations, Chun violated Rolovich's clearly-established due process rights by unlawfully depriving him of his property interest in his contract's liquidated damages provision. ................ 17

C. Chun's actions toward Rolovich also violated the unconstitutional conditions doctrine. ...................................................................... 19

III. Rolovich has adequately pled that Defendants violated his rights under Title VII and WLAD ............................................................................... 20

A. Rolovich has adequately pled a failure-to-accommodate claim. ................... 20

B. "Undue hardship" is not a complete defense to a failure-to-accommodate claim." .......................................................... 20

CONCLUSION ........................................................................................ 22

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**WSU DEFENDANTS' MOTION TO DISMISS**
**NO. 2:22-cv-00319-TOR - ii**

**LAW OFFICE OF BRIAN FAHLING**
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

**Cases**

*Anspach v. Philadelphia, Dept. of Public Health,*
   503 F.3d 256 (3rd Cir. 2007) ................................................................ 13

*Armstrong v. Reynolds*,
   22 F.4th 1058 (9th Cir. 2022) .............................................................. 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................. 10

*Badgett v. Security State Bank*,
   116 Wash. 2d 563 (1991)..................................................................... 13

*Bathke v. City of Ocean Shores*,
   No. C19-5338 BHS, 2020 WL 4816035 (W.D. Wash. Aug. 19, 2020) ................. 11, 14

*Betchard-Clayton, Inc. v. King*,
   41 Wash. App. 887 (1985), review denied, 104 Wash. 2d 1027 (1985) ...................... 12

*Bordeaux v. Lion's Gate Entertainment, Inc.*,
   2022 WL 19076668 (C.D. Cal. Dec. 28, 2022) ........................................... 12

*Bostock v. Clayton Cnty., Georgia*,
   140 S. Ct. 1731 (2020)......................................................................... 21

*Cleveland Bd. of Educ. v. Loudermill*,
   470 U.S. 532 (1985)............................................................................. 19

*Crider v. Spectrulite Consortium, Inc.*,
   130 F.3d 1228 (7th Cir. 1997) .............................................................. 11

*Cruzan v. Director, Missouri Dep't of Health*,
   497 U.S. 261 (1990)............................................................................. 20

*Dice v. City of Montesano*,
   131 Wash. App. 675 (2006)................................................................... 14

*Doe v. United States Dept. of Justice*,
   753 F.2d 1092 (D.C. Cir. 1985) ............................................................ 10

*Doster v. Kendall,*
 54 F.4th 398 (6th Cir. 2022) ................................................. 13

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,*
 575 U.S. 768 (2015) ........................................................... 22

*Eminence Capital, LLC v. Aspeon, Inc.,*
 316 F.3d 1048 (9th Cir. 2003) .............................................. 10

*Everson v. Bd. of Ed. of Ewing Twp.,*
 330 U.S. 1 (1947) .............................................................. 17

*Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa.,*
 877 F.3d 487 (3d Cir. 2017) ................................................ 15

*Hamdi v. Rumsfeld,*
 542 U.S. 507 (2004) ........................................................... 18

*Hanson v. Carmona,*
 525 P.3d 940 (Wash. 2023) (en banc) ................................... 17

*Johnson v. City of Shelby, Miss.,*
 574 U.S. 10 (2014) ............................................................. 10

*Jones v. Bd. of Governors of Univ. of N.C.,*
 704 F.2d 713 (4th Cir. 1983) ................................................ 18

*Koala v. Khosla,*
 931 F.3d 887 (9th Cir. 2019) ................................................. 9

*Koontz v. St. Johns River Water Mgmt. Dist.,*
 570 U.S. 595 (2013) ........................................................... 20

*Lee v. City of Los Angeles,*
 250 F.3d 668 (9th Cir. 2001) ............................................... 10

*Linden v. X2 Biosystems,*
 No. C17-966 RSM, 2019 WL 13240852 (W.D. Wash. Jan 28, 2019) ......... 11

*Lund v. Grant County Public Hosp. Dist. No. 2,*
 85 Wash. App. 223 (1997) .............................................. 11, 14

*McDougal v. County of Imperial,*
 942 F.2d 668 (9th Cir. 1991) ................................................. 9

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**WSU DEFENDANTS' MOTION TO DISMISS**
**NO. 2:22-cv-00319-TOR - iv**

**LAW OFFICE OF BRIAN FAHLING**
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ........................................................ 9

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*,
   78 Wash. App. 707 (1995) ............................................................ 12

*Perez v. Zahara*,
   332 Fed. Appx. 214 (5th Cir. 2009) .......................................... 13, 17

*Peters v. Univ. of Pittsburgh*,
   No. 2:18-cv-732, 2019 U.S. Dist. LEXIS 1318 (W.D. Pa. Jan. 4, 2019) ..................... 19

*Phillips v. Collings*,
   256 F.3d 843 (8th Cir. 2001) ........................................................ 22

*Sagendorf–Teal v. Cnty. of Rensselaer*,
   100 F.3d 270 (2d Cir.1996) .......................................................... 18

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...................................................... 10

*Thomas v. Review Board*,
   450 U.S. 707 (1981) ................................................................... 16

*Torcaso v. Watkins*,
   367 U.S. 488 (1961) ................................................................... 17

*United Fin. Cas. Co. v. Coleman*,
   173 Wash. App. 463 (2013) ......................................................... 13

*Washington v. Harper*,
   494 U.S. 210 (1990) ................................................................... 21

*Wolcott v. Bd. of Rabbis of N. & S. California*,
   738 F. App'x 538 (9th Cir. 2018) ................................................. 16

## Statutes

RCW 49.48, *et seq.* ........................................................................ 15

RCW 49.52, *et seq.* ........................................................................ 15

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - v

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

# INTRODUCTION

Nick Rolovich, WSU's then-head football coach, concluded it would violate his conscience—and his moral duty as a Catholic—to receive a COVID vaccine. His contract did not require him to take a COVID vaccine, and the Governor's vaccine mandate exempted WSU employees with sincere religious objections.

Nevertheless, Rolovich's boss, Defendant Chun, preemptively decided that Rolovich's religious objection would result in his termination and overrode the University's "blind review" process to make sure it reached his predetermined outcome. This led to Rolovich's termination "for just cause" and the deprivation of his contractual liquidated damages.

Under these pled facts, does Rolovich state a cognizable claim?

# SUMMARY OF ARGUMENT

Rolovich has never disputed that WSU had the right to terminate him. Indeed, college head football coaches get fired all the time. But what WSU cannot do is terminate him for "just cause," and thereby avoid the liquidated damages required under the contract, because he had a sincere religious objection to receiving a COVID vaccine.

Defendants' motion misconstrues the pertinent legal issues and draws the Court's attention to extrinsic evidence that is not properly the subject of judicial notice. Besides being procedurally improper, Defendants' reliance on their purported "factual" record is unfairly one-sided and incomplete. This appears to be an attempt to skew the information available for the Court's consideration to dispose of this case in a summary-judgment style at an early stage before discovery or even initial disclosures have been completed.

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

However, the motion to dismiss standard is clear, and the task before the Court at this early stage of litigation is simple. The facts alleged by Rolovich—in his First Amended Complaint ("FAC") and in the documents incorporated into that Complaint by reference—meet and exceed the Rule 12(b)(6) plausibility standard. Below, Rolovich highlights some of the most important of these alleged facts and shows why the Court, assuming that each of these facts are true, can draw the reasonable inference that Defendants WSU and Chun are liable for breaching Rolovich's contract, breaching the implied covenant of good faith and fair dealing, violating the Wrongful Withholding of Wages statute, violating Rolovich's rights under the First and Fourteenth Amendment, violating Title VII, and violating Washington's Law Against Discrimination.[1]

Rolovich has pled sufficient facts to state claims for the relief requested. Defendants' Motions to Dismiss must be denied in its entirety, excepting those claims identified in footnote 1.

## FACTS AS PLED BY ROLOVICH

The basic outline of Rolovich's pled case is as follows. These facts are spelled out in greater detail in the First Amended Complaint, ECF No. 1-1 pp. 73-104

---

[1] Plaintiff does not oppose dismissal of Governor Inslee, in his official Capacity, as a party-defendant. Mr. Rolovich does not oppose Defendant WSU's and Mr. Chun's motions to dismiss the following claims: Count III (Wash. Const. art. I, § 11), Count VI Free Exercise Clause of U.S. Const., amend. I), and Count VII (Due Process Clause of U.S. Const., amend. XIV).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 2**

**LAW OFFICE OF BRIAN FAHLING**
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

("FAC"), and the exhibits incorporated into the FAC by reference, especially

Rolovich's administrative appeals.[2]

**A. Washington State and WSU React to the COVID Pandemic**

Less than two months after WSU hired Rolovich, Washington State entered a

State of Emergency due to the COVID virus. *Id.* ¶ 21. In early 2021, the federal

government granted an Emergency Use Authorization ("EUA") for experimental

COVID vaccines.[3]

On August 20, 2021, Governor Inslee issued Proclamation 21-14.1, which states

in relevant part,

> Workers for operators of Educational Settings . . . ***are not required to
> get vaccinated*** against COVID-19 under this Order if they are unable to

---

[2] *See* Declaration of Brian Fahling (Fahling Decl.), filed by Rolovich subsequent to

this response. Attached to that Declaration are Exhibit 1 (Rolovich Religious

Exemption Request Form submitted to HRS) and Exhibit 2 (Rolovich administrative

appeal to WSU President Shultz with attachments). FAC incorporates each of these

exhibits by reference. *See* FAC ¶¶ 63 (Ex. 1) and 5 (Ex. 2).

[3] Though Defendants suggest it is probative that Rolovich described available

vaccines as "experimental" (ECF 22 at 7, 16, 20), the FDA, NIH, and WHO all use

this term. *See* FDA, Understanding the Regulatory Terminology of Potential

Preventions and Treatments for COVID-19 (Oct. 20, 2020), http://bit.ly/43gRKkd;

NIH, Experimental coronavirus vaccine is safe and produces immune response (July

21, 2020), http://bit.ly/43opJHa; WHO, Coronavirus disease (COVID-19): Vaccine

research and development (Aug. 10, 2021), http://bit.ly/43xIpoe. Rolovich asks the

Court to take judicial notice of these government records. *See* ECF No. 22 at 2.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**WSU DEFENDANTS' MOTION TO DISMISS**
**NO. 2:22-cv-00319-TOR - 3**

**LAW OFFICE OF BRIAN FAHLING**
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

do so because of a disability or if the requirement to do so conflicts with
their sincerely held religious beliefs, practice, or observance.

(emphasis added). WSU referenced this Proclamation and its successor, 21-14.2, in
correspondence regarding Rolovich's request for an exemption and in its letter
terminating his employment.

**B. Rolovich's Employment Contract with WSU**

Rolovich's contract with WSU and the State of Washington was set to expire on
June 30, 2025. ECF No. 1-1 at 38 (Employment Agreement). The contract provided
that WSU could terminate Rolovich for "just cause" if he was found to be in
violation of the just cause provisions set forth in the contract. The grounds for "just
cause" termination are specified in great detail. *Id.* at 41-42. If WSU terminated
Rolovich for "just cause," "all obligations of the University to make further
payments under th[e] Agreement and/or to provide any other consideration . . .
[would] cease." *Id*. at 43. The contract also provided that WSU could terminate
Rolovich "without cause" at any time, but such a termination entitled Rolovich to
"liquidated damages in an amount equal to sixty percent (60%) of the remaining base
salary due under the terms of [the] Agreement." *Id.* at 44.

Around July 2021, WSU induced some of its football coaches to sign new
employment agreements with provisions requiring them to "follow all federal, state,
and local health directives, as well as university policies related to health and safety.
FAC ¶ 22. Rolovich, however, did not sign an amendment to his employment
agreement requiring him to follow health directives or university policies related to
health and safety; his contract with WSU has no such provisions. *Id*. ¶ 23.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 4

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

### C. WSU and Chun's Interacts with Rolovich regarding Vaccination, Demonstrate Coercive Conduct toward Rolovich and his Religious Beliefs

On May 24, 2021, after Rolovich told Chun that he did not intend to get a COVID-19 vaccine, Chun claimed that he was worried about Rolovich's *mental health* and accused him of having *extreme views* regarding many issues. FAC ¶ 31.

Three days later, Rolovich was called to a 3 p.m. meeting at Chun's office, where Chun told Rolovich that his *beliefs were making him incapable of leading his players*. *Id.* Chun also tried to get Rolovich into counseling because he believed that Rolovich had mental health issues. *Id.* ¶ 32. Chun then suggested that Rolovich should talk to Chun's wife because she had been in a couple different religions he referred to as "cults." *Id.*

On August 3, 2021, seventeen days before Governor Inslee mandated that all state employees be vaccinated, Kathryn Leathers, Governor's Office General Counsel, discussed exemptions to the planned mandate with the Governor's staff: "Of possible exemptions [to the vaccine mandate]: medical for sure; and religious (if we have to; if yes, as narrow as possible)." *Id.* ¶ 36. Rolovich is a practicing Catholic. *Id.* ¶ 25.

On August 16, 2021, four days before the mandate was imposed, Rolovich was called to an urgent meeting with Chun and Deputy Director of Athletics, Bryan Blair. *Id.* ¶ 34. At this meeting, Chun told Rolovich that Governor Inslee was intending to issue a vaccine mandate that would eliminate the "personal exemption" from the coaching staff's declaration of vaccination status. *Id.* Chun *warned* Rolovich that any religious exemption request he submitted would be *scrutinized to no end*, and that Inslee's mandate would have a "*high threshold*" for religious

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

exemptions moving forward, *id.,* and that Rolovich *could be expected to be fired with cause* on October 19. *Id.* ¶ 35.

On August 19, 2021, Rolovich was summoned to another meeting with Chun and Assistant Athletics Director Bryan Blair. *Id.* ¶ 38. Chun told Rolovich that he had four choices: 1. Get the vaccine; 2. Don't get the vaccine and get fired; 3. Claim an exemption; or 4. Resign right now. *Id.* Rolovich told Chun that he was not resigning and that he wanted to coach the team. *Id.* Chun continued, "but *you say you don't care about the money*" and "*why don't you just resign?*" *Id.* Chun then accused Rolovich of having situational integrity*,* and called Rolovich a "con-man," accusing him of being selfish. *Id.* Chun then stated that Rolovich's objections to receiving the vaccine were causing Chun and President Schulz reputational damage. *Id.* Chun then stated that all Rolovich had to do is get vaccinated. *Id. Chun admitted his efforts get Rolovich to take the vaccine in the past had been coercive. Id.* ¶ 39.

Chun pressed Rolovich again about the vaccine, and Rolovich replied that he believed he had privacy rights and did not feel comfortable telling Chun about his reasons for declining to receive a COVID vaccine. *Id.* Chun then demanded that Rolovich tell him what his answer would be. *Id*. During the same meeting, Chun also told Rolovich that Governor Inslee "did this" just to come after Rolovich and WSU, and that he "only had two options: *get vaccinated or resign*. *Id.* ¶ 40. Chun then admitted that the Board of Regents wanted Rolovich fired. *Id.*

Rolovich had refrained from bringing his religious beliefs into his conversations with Chun about COVID vaccines. *Id.* ¶ 41. Rolovich did not feel comfortable talking about his faith because it is a very personal matter to him, and he was uncomfortable talking about his religious beliefs with his supervisor. *Id.* Rolovich

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

was also uncomfortable because he did not know how WSU would react to him sharing his religious opposition to medical research based on aborted fetal tissue, given that WSU professors have in the past publicly defended such research. *Id.* ¶ 42.

Rolovich asked Chun and Blair about the University's process for requesting a religious exemption from a vaccine mandate. Chun and Blair said they did not know details about the University's process, *id.*, nevertheless, Chun then told Rolovich that he needed to have his religious exemption approved by August 29, the Sunday before the Utah State game. *Id.* ¶ 43.

Chun and Blair told Rolovich that they were in a time crunch and had to decide if he was going to coach that season. *Id.* ¶ 44. They said they did not want to start a season with Rolovich if they thought they may have to fire him on Oct 18th, pursuant to the Governor's mandate. *Id.*

Rolovich responded that he would seek a religious exemption right then if one was available. *Id.* ¶ 45. Chun and Blair then got even more heated, with Chun saying if Rolovich got the religious exemption, he would forever question his character. *Id.* Chun and Blair both talked about the early days of the pandemic, and that Rolovich had not mentioned his faith, Rolovich responded that he did not see the point, as he does not see faith and science as exclusive. *Id.* Chun and Blair then stressed that the University's religious exemption would be hard to get and that there was no guarantee that Rolovich's request would be approved. *Id.* ¶ 46.

**D. WSU Establishes Process for Evaluating Religious Exemption Requests**

Shortly after the vaccine mandate, WSU published procedures for evaluating religious exemption requests, the procedures established a blind review process for

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

the requests. *See generally, id.* ¶¶ 59-62. For employees, the exemption requests go through a two-step process. *Id.* ¶ 61. The first is the blind review. *Id.* Then, if an exemption is approved, the request moves to a separate accommodation review step. *Id.* WSU Vice President for Communications, Phil Weiler, describe how the process would be applied to Rolovich's request: "if the blind review results in the approval of Rolovich's request [by the reviewing committee] . . . an email [i]s sent to his/her supervisor indicating the exemption had been approved." *Id.* ¶ 62.

**E. Rolovich Submits, and WSU Evaluates, His Application for Religious Exemption**

On September 28, 2021, Rolovich submitted his application for a religious exemption to HRS. *Id.* ¶ 63; Fahling Decl. Ex. 1 (Rolovich Religious Exemption Request Form submitted to HRS).

On October 6, 2021, HRS notified Chun that "WSU has engaged in a good faith review of the information submitted through written and/or oral communications, which support the accommodation request based on a sincerely held religious belief." ECF No. 23 at 26, Email from WSU's HRS to Mr. Chun and Ms. Anne McCoy re Nick Rolovich, *see also* FAC ¶¶ 64-65.

Given that HRS had already found Rolovich sincere and granted him a religious exemption, step one of the "two-step process"). *Id.* ¶ 61. As such, when HRS wrote Chun, it merely asked him to consider whether he believed Rolovich's accommodation request could be granted. *Id.* Chun responded to HRS stating that the athletics department could not accommodate Rolovich, *id.* ¶ 66, but Chun then interfered with WSU's stated "blind review" policy: he improperly added a third step to the two-step process, telling HRS that he did not believe that Rolovich's religious

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 8

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

beliefs were sincere, *id*. ¶ 67, an opinion that resulted in HRS "question[ing] the

assertion that [Rolovich's] sincerely held religious beliefs are in conflict with the

University's vaccine requirement." On those grounds, HRS denied his religious

exemption. ECF No. 23 at 48 (Oct. 18, 2021, email from HRS to Rolovich notifying

him that his religious exemption had been denied).

### F. WSU Confirms its Decisions through Rolovich's Administrative Appeal

As required under the contract, Rolovich appealed WSU's determination first to

Chun and then to WSU President Schulz. FAC ¶ 5, Fahling Decl. Ex. 2 (Rolovich

administrative appeals). On December 6, 2021, WSU President Kirk H. Schulz

notified Rolovich that his "just cause" termination was final. ECF No. 23 at 62-64.

### STANDARD OF REVIEW

On a motion to dismiss, the Court must "accept the complaint's well-pleaded

factual allegations as true and construe all inferences in the plaintiff's favor." *Koala*

*v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019). "It is axiomatic that the motion to

dismiss for failure to state a claim is viewed with disfavor and is rarely granted."

*McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991). The

question for the Court is whether the "non-conclusory, factual content, and

reasonable inferences from that content" are "plausibly suggestive of a claim

entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.

2009) (cleaned up).

"The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 697 (2009). "It may appear on the face of the pleadings that a

recovery is very remote and unlikely but that is not the test." *Starr v. Baca*, 652 F.3d

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 9

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

1202, 1215 (9th Cir. 2011) (cleaned up). A Rule 12(b)(6) motion will not be granted merely because plaintiff requests a remedy to which he or she is not entitled. "[I]t need not appear that the plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985). Thus, a complaint should not be dismissed because plaintiff relies on an incorrect or imperfectly stated legal theory if the facts alleged any legal theory. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11-12 (2014).[4]

"A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment. [However, a district court abuses its discretion when it takes] judicial notice of disputed matters of fact to support its ruling." *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

## ARGUMENT

### I. Rolovich has adequately pled that WSU breached his employment contract.

WSU's assertion that it had "just cause" to terminate Rolovich, and therefore did not breach the contract, is not a matter to be resolved in a motion to dismiss. The only question that this Court must answer for this claim is whether Rolovich has pled sufficient facts to support his claim for breach of contract, breach of the implied

---

[4] To the extent the Court finds any aspect of the Complaint lacking, Plaintiff seeks leave to amend. Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (cleaned up).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 10

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

covenant of good faith and fair dealing, and violation of the Wrongful Withholding of Wages statute. Rolovich has done so.

### A. Whether Defendants had "just cause" to terminate Rolovich is a question of fact not amenable to a motion to dismiss.

Defendants claim that Rolovich's contract claim is amenable to a motion to dismiss because "[w]hether the undisputed facts of a particular case establish just cause is a question of law for the court." ECF No. 22 at 39 (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1228, 1242 (7th Cir. 1997)). *Crider* is contrary to Washington law. Under Washington law, "[i]n a wrongful termination case, whether an employer properly determined it had just cause for termination is a question for the trier of fact." *Bathke v. City of Ocean Shores*, No. C19-5338 BHS, 2020 WL 4816035, at *6 (W.D. Wash. Aug. 19, 2020) (quoting *Lund v. Grant County Public Hosp. Dist. No. 2*, 85 Wash. App. 223, 228-29 (1997)).

*Linden v. X2 Biosystems* does not state otherwise. *See* ECF No. 22 at 40 (citing *Linden v. X2 Biosystems*, No. C17-966 RSM, 2019 WL 13240852, at *3-4 (W.D. Wash. Jan 28, 2019)). That court granted a motion to dismiss because the plaintiffs' "allegations fail to show that Defendants' stated reason for termination—that Defendants lacked the funds to continue paying them—was not arrived at in good faith or was not a fair and honest reason" and failed to allege "that their terminations were arbitrary, capricious, or illegal." *Linden*, 2019 WL 13240852 at *3-4. Rolovich has alleged facts that, if proven, would show that Defendants terminated him illegally. *Linden* therefore does not apply.

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

**B. Rolovich has adequately pled his contract claims.**

From the foregoing facts, all facts alleged in the complaint, and the documents properly submitted by Defendants and Rolovich, the Court can reasonably infer that he has adequately pled the following contract claims, *any one of which* is adequate to defeat Defendants' motion:

**(1)** Defendants had a contractual duty to Rolovich, they breached that duty, and that breach proximately caused the plaintiff damage. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712 (1995).

**(2)** The contract did not require Rolovich to receive a COVID vaccination because he was exempt under the Governor's Proclamation's plain terms: Rolovich was "not required to get vaccinated against COVID-19" because "the requirement to do so conflict[ed] with [his] sincerely held religious beliefs." *See* Fahling Decl. at 15-16 (quoting Governor's Proclamation 21-14.1).

**(3)** Defendants' actions to amend other coaches' contracts but not Rolovich's (FAC ¶¶ 21-23) indicates that Rolovich's contract did not require him to comply with the vaccination mandate. He was therefore unlawfully terminated with "just cause" for failing to comply with a condition that was not in his contract. *See Bordeaux v. Lion's Gate Entertainment, Inc.*, No. 2:22-cv-04244-SVW-PLA, 2022 WL 19076668 at *1, 8 (C.D. Cal. Dec. 28, 2022) (Defendants' "inclusion of a condition not contained in the original contract, a vaccine compliance mandate, could be considered a breach the agreement."); *see also Betchard-Clayton, Inc. v. King*, 41 Wash. App. 887, 890 (1985), *review denied*, 104 Wash. 2d 1027 (1985) ("the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract [or] inject substantive terms into the parties'

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 12

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

contract"); *Badgett v. Security State Bank*, 116 Wash. 2d 563, 570 (1991) ("The duty to cooperate exists only in relation to performance of a specific contract term"); *United Fin. Cas. Co. v. Coleman*, 173 Wash. App. 463, 473 (2013) ("the law does not obligate a party to accept a material change in the terms of its contract" (cleaned up)).

**(4)** Though WSU and Chun treated Rolovich's termination as a "just cause" termination (depriving him of the liquidated damages he otherwise would have been entitled to under the contract), Defendants terminated him because of his sincere religious beliefs, thus violating his clearly established constitutional rights under the Free Exercise Clause of the First Amendment. *See Perez v. Zahara*, 332 Fed. Appx. 214, 215 (5th Cir. 2009); *see also Anspach v. Philadelphia, Dept. of Public Health*, 503 F.3d 256, 272 (3rd Cir. 2007) ("It is clear that governmental compulsion either to do or refrain from doing an act forbidden or required by one's religion . . . is the evil prohibited by the Free Exercise Clause. The concept is a simple one. In essence, the state may not compel an individual to act contrary to his religious beliefs."); *Doster v. Kendall*, 54 F.4th 398, 418 (6th Cir. 2022) ("Because the Surgeon General has denied the appeals of most Plaintiffs, they face a choice between violating their religious beliefs by taking the vaccine or 'risking' a sanction by failing to follow an order.").

**(5)** WSU's breach resulted in violations of RCW 49.48, *et seq.,* and RCW 49.52, *et seq.* (Wrongful Withholding of Wages, *see* FAC ¶¶ 2, 34), by unlawfully terminating Rolovich for "just cause" to avoid paying him the wages owed if he had

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 13

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

been dismissed "without cause."[5] *See Dice v. City of Montesano*, 131 Wash. App. 675, 689 (2006) ("[T]he three months' salary due Dice constitutes 'wages' because it derives solely from Dice's employment contract with the City and the amount was calculated according to his employment earnings at the time of discharge.") (cleaned up).

Plaintiff has sufficiently pled facts supporting a claim for relief for a breach of contract claim, a breach of implied covenant of good faith and fair dealing, and a violation of Washington's Wrongful Withholding of Wages statute. Rolovich has plainly alleged that Defendants acted illegally in terminating him. Therefore, *Bathke* and *Lund* apply: "whether [Defendants] properly determined it had just cause for termination is a question for the trier of fact."

---

[5] Defendants did not file a Fed. R. Civ. P. 12(e) Motion for a More Definite Statement regarding Plaintiff's claims, including Plaintiffs claims under RCW 49.48, *et seq.,* and RCW 49.52, *et seq.*, *see* FAC ¶¶ 2, 34 (Wrongful Withholding of Wages). Defendants' unlawful "just cause" termination of Mr. Rolovich denied him his right to liquidated damages under the "without cause" provision of his contract with WSU. Liquidated damages constitute "wages" because they were derived solely from Mr. Rolovich's employment contract with WSU and the amount was calculated according to his employment earnings at the time of discharge. *See Dice*, 131 Wash. App. at 689.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**WSU DEFENDANTS' MOTION TO DISMISS**
**NO. 2:22-cv-00319-TOR - 14**

**LAW OFFICE OF BRIAN FAHLING**
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

**C. Rolovich has sufficiently pled that a sincere religious belief precluded him from complying with Defendants' mandate.**

There is no dispute that Rolovich did not receive a COVID vaccine. But *why* he did not get vaccinated is critical to his contract claims, as well as other his other claims addressed below. Rolovich has alleged that his sincere religious beliefs required him not to get the COVID vaccine.

Defendants spend several pages contending that Rolovich has not pled "any religious beliefs against vaccination." ECF No. 22 at 16-21. Defendants—state actors *subject to the First Amendment*—argue that Rolovich's alleged religious convictions *don't count*. They claim that Rolovich's Complaint, which cites the Catechism of the Catholic Church, fails to connect his stated religious objection to a "comprehensive system of beliefs about fundamental or ultimate matters." *Id*. at 19 (quoting *Fallon v. Mercy Catholic Medical Center,* 877 F.3d 487, 492 (3d Cir. 2017)). Defendants argue that Rolovich's objections are really rooted "in his own pseudo-scientific concerns." *Id*. at 16.

Delving into whether Rolovich's objections were religious or scientific *is* a sincerity inquiry. That is how the law understands it, and that is how Defendants understand it. *See* ECF No. 23 at 33 (Chun argues to HRS that Rolovich's statement that "his decision not to be vaccinated was based on the conclusions he reached following his own research" "cast[s] doubt on his claimed sincerely held religious belief."). Likewise, arguing that Rolovich's objections *weren't really* religious because of when he filed his exemption request (ECF No. 22 at 7, 31) *is* a sincerity inquiry—in other words, a *quintessential* factual inquiry. As such, these intrinsically *factual* arguments cannot be considered in a motion to dismiss.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**WSU DEFENDANTS' MOTION TO DISMISS**
**NO. 2:22-cv-00319-TOR - 15**

**LAW OFFICE OF BRIAN FAHLING**
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

It is worth briefly noting, however, that Defendants' arguments misunderstand how religious convictions are formed. Just as the plaintiff's religious objections in *Thomas v. Review Board* depended on his understanding of the potential uses of steel sheets and steel tank turrets, 450 U.S. 707, 710 (1981), Rolovich's religious objections depended on his assessment of factual matters, including those referenced in Defendants' motion.

For purposes of the present motion, it is enough that Rolovich has pled that his religious beliefs are sincere. FAC ¶¶ 24-29. *See Wolcott v. Bd. of Rabbis of N. & S. California*, 738 F. App'x 538, 539 (9th Cir. 2018) (reversing district court dismissal based on failure to allege sincerely held religious belief).

## II. Rolovich has adequately pled under § 1983 that Chun violated his First Amendment right to free exercise and Fourteenth Amendment right to procedural due process.

As noted above, Rolovich is asserting § 1983 claims only against Chun. As shown here, the alleged facts permit reasonable inferences that Chun violated Rolovich's free exercise and due process rights. From these alleged facts it can be reasonably inferred that Chun is not entitled to qualified immunity. It is settled that

> [R]espondeat superior case law establishes that an employee taking an act within the scope of their government employment is an act of the governmental entity. Therefore, acts within the scope of employment are done within one's official capacity whether one is sued in their individual or official capacity.

*Hanson v. Carmona,* 525 P.3d 940, 943 (Wash. 2023) (en banc).

### A. Under the pled allegations, Chun violated Rolovich's clearly-established free exercise rights.

From the summation provided in the factual background section above, and more broadly from the facts alleged in the FAC and other documents incorporated into the

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 16

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

Complaint by reference, the Court can reasonably infer the following: (a) if (as alleged) WSU and Chun attempted to coerce and compel Rolovich to get vaccinated, and (b) WSU then terminated him (as alleged) as a because of his religious beliefs, (c) then WSU and Chun violated Rolovich's clearly established constitutional rights under the Free Exercise Clause of the First Amendment. At least since 1947, the law protecting the free exercise of religion has been clearly established: "[n]o person can be punished for entertaining or professing religious beliefs or disbeliefs." *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15–16 (1947). This constitutional right is also well established in the government employment context. *Perez,* 332 Fed. Appx. at 215 (affirming district court's denial of qualified immunity at summary judgment stage: "if Defendants terminated him because of his religious beliefs—then Defendants would have violated [plaintiff's] clearly established constitutional rights under the Free Exercise Clause of the First Amendment.") (citing *Torcaso v. Watkins*, 367 U.S. 488, 495 (1961)); *Sagendorf–Teal v. Cnty. of Rensselaer*, 100 F.3d 270, 276 (2d Cir. 1996) (rejecting defendant's qualified immunity defense because "[t]he right to be free of adverse employment action by a public employer for the exercise of First Amendment rights was firmly established prior to the discharge in this case.").

**B. Under the pled allegations, Chun violated Rolovich's clearly-established due process rights by unlawfully depriving him of his property interest in his contract's liquidated damages provision.**

The Fourteenth Amendment to the U.S. Constitution prohibits government from depriving people of liberty or property without procedural due process. One aspect of this constitutional right is that government cannot terminate employees who have a "for cause" provision in their employment contracts except through the reasoned

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

application of a rule of law, something that requires that the decision be made by a neutral decisionmaker. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (plurality opinion).

Chun's disruption and violation of WSU's blind review process constituted a violation of procedural due process. *Jones v. Bd. of Governors of Univ. of N.C.*, 704 F.2d 713, 717 (4th Cir. 1983) ("while the source of procedural guarantees is found solely in the due process clause, it is well recognized that significant departures from state procedures may evince procedural due process violations."). Also, Rolovich clearly had an entitlement to, and a property interest in, the liquidated damages he would have received if he had been terminated "without cause." The "[k]ey to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022).

"In general, a law establishes a property interest in employment if it restricts the grounds on which an employee may be discharged." *Armstrong*, 22 F.4th at 1068 (cleaned up). Here, Rolovich's contract specified what counted as "just cause." Rolovich has alleged that his contract—unlike other coaches—was not amended to make following health directives a condition of employment. FAC ¶¶ 21-23. Nor is it conceivable that government could have "just cause" to terminate an employee with a sincere religious objection to a new demand placed on him. *See also Peters v. Univ. of Pittsburgh*, No. 2:18-cv-732, 2019 U.S. Dist. LEXIS 1318, at *12 (W.D. Pa. Jan. 4, 2019) (the "University was alleged to have terminated plaintiff for just cause. Those allegations are sufficient to state a deprivation of a property interest for

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

purposes of a procedural due process claim. . .[and] it may be reasonably inferred that plaintiff was terminated pursuant to the just-cause clause, which confers a property interest to plaintiff in his employment, and not the unilateral-termination clause, which allows termination without just cause accompanied by payments of liquidated damages."); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538-39 (1985) (recognizing a property right created by a for-cause termination provision).

### C. Chun's actions toward Rolovich also violated the unconstitutional conditions doctrine.

Rolovich has pled that Chun persistently threatened him with termination for "just cause," relentlessly attacked Rolovich's religious beliefs, and told him with certainty any request for religious exemption would be denied before Chun knew under what standards the exemption would be provided. Rolovich has pled that Chun did this to coerce him into getting a vaccine. It can be inferred from these allegations that yielding to the vaccine requirement created a hostile work environment and unconstitutional conditions burdening his First and Fourteenth Amendment rights. These coercive actions provide further evidence of the free exercise and due process violations outlined above.

The unconditional conditions doctrine "forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them" *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). *See also Memorial Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974) ("[an] overarching principle, known as the unconstitutional conditions doctrine … vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up"). Moreover, there is a constitutionally protected liberty interest in refusing

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 19

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

unwanted medical treatment. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990); *see also, Washington v. Harper,* 494 U.S. 210, 229 (1990) (A "forcible injection … into a nonconsenting person's body represents a substantial interference with that person's liberty[.]").

## III. Rolovich has adequately pled that Defendants violated his rights under Title VII and WLAD.

### A. Rolovich has adequately pled a failure-to-accommodate claim.

The parties agree that to state a claim under Title VII and WLAD, Rolovich must plausibly allege he had a sincere religious belief that conflicted with Defendants' vaccine mandate. *See* ECF No. 22 at 22 (citing cases). As shown above, Rolovich has pled that he had a sincere religious belief that precluded him from complying with the Governor's and WSU's vaccine mandate. *See supra* § I.C. As such, he has adequately pled this claim.

### B. "Undue hardship" is not a complete defense to a failure-to-accommodate claim."

Rolovich has pled that WSU could have safely accommodated him. FAC ¶¶ 65-86. But even if the Court could find based on the pleadings that accommodating Rolovich would have caused WSU an undue hardship, that would not—as Defendants claim—be a "complete defense." ECF No. 22 at 14. "[A]n employer cannot escape liability by showing that discrimination on a prohibited ground was not its sole motivation. So long as a prohibited ground was a motivating factor, the existence of other motivating factors does not defeat liability." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1775 (2020). "If the applicant actually requires an accommodation of that religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision, the employer

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 20

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

violates Title VII." *E.E.O.C. v. Abercrombie & Fitch*, 575 U.S. 768, 773-74 (2015). Furthermore, by August 16 Chun had already made up his mind that he was going to terminate Rolovich with "just cause" (FAC ¶¶ 34-35), clearly indicating that he had no intention of accommodating Rolovich's sincere religious beliefs. *See Phillips v. Collings*, 256 F.3d 843, 850-51 (8th Cir. 2001) ("[A]lthough [defendant] contends she did in fact accommodate [plaintiffs] religious beliefs, her recommendation that he be terminated because he requested 'not being assigned work that is counter to his religious' beliefs aptly reveals she had no intention of accommodating them.").

Here, Rolovich has alleged that Defendants demonstrated animus against Rolovich's religious beliefs and that that animus was a motivating factor in WSU's decision to overrule its own internal experts' finding that Rolovich could be safely accommodated. *See, e.g.*, FAC ¶ 65-67, 102-03, 106, 110, 114. Rolovich has thus sufficiently pled that Defendants' failure to accommodate his sincere religious beliefs violated his rights under Title VII and WLAD.

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

**CONCLUSION**

For the reasons provided above, the WSU Defendants' motion to dismiss should be denied.

DATED this 12th day of April, 2023.

**LAW OFFICE OF BRIAN FAHLING**

By:_____/s/ Brian Fahling_____
Brian Fahling WSBA #18894
8124 NE 166th Street
Kenmore, WA 98028
Tele: 425.802.7326

**KNIFFIN LAW PLLC**

By:_____/s/ Eric Kniffin_____
Eric Kniffin CO Bar # 48016
102 S. Tejon Street, Suite 1100
Colorado Springs, CO 80903
Tele: 719-212-4391
Email: eric@kniffin.law
*Admitted pro hac vice*

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

By:_____/s/ E. Job Seese_____
E. Job Seese, CO Bar # 48379
1601 19th Street, Suite 1000
Tele: 303.623.9000
Email: jseese@lewisroca.com
Denver, CO 80202
(303) 623-9000
*Admitted pro hac vice*

*Attorneys for Plaintiff*

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of April, 2023, I electronically filed the forgoing RESPONSE IN OPPOSITION TO DEFENDANTS WSU'S AND CHUN'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that none of the represented parties are non-CM/ECF participants.

By:____/s/ Eric Kniffin_____
Eric Kniffin

PLAINTIFF'S RESPONSE IN OPPOSITION TO
WSU DEFENDANTS' MOTION TO DISMISS
NO. 2:22-cv-00319-TOR - 23

LAW OFFICE OF BRIAN FAHLING
8124 NE 166th St
Kenmore, WA 98028
T: (425) 802-7326
E: bfahling@fahlinglaw.com