1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   NICHOLAS ROLOVICH,

                                            NO. 2:22-CV-0319-TOR
8                          Plaintiff,

                                            ORDER ON MOTIONS TO DISMISS
9         v.

10  WASHINGTON STATE
    UNIVERSITY, an agency of the State
11  of Washington; PATRICK CHUN,
    Director of Athletics for Washington
12  State University, in his individual
    capacity; and JAY INSLEE,
13  Governor, in his official capacity,

14                         Defendants.

15

16        BEFORE THE COURT are Defendants' Motions to Dismiss (ECF Nos. 21,

17  22).  These matters were submitted for consideration with oral argument on May

18  11, 2023.  Brian Fahling and Eric Job Seese appeared on behalf of Plaintiff.

19  Cristina Sepe appeared on behalf of Defendant Inslee.  Zachary J. Pekelis and

20  Spencer W. Coates appeared on behalf of Defendants Washington State University

ORDER ON MOTIONS TO DISMISS ~ 1

and Patrick Chun.  The Court has reviewed the record and files herein, considered the parties' oral arguments, and is fully informed.  For the reasons discussed below, Defendant Inslee's Motion to Dismiss (ECF No. 21) is **GRANTED**. Defendants Washington State University and Chun's Motion to Dismiss (ECF No. 22) is **GRANTED in part and DENIED in part**.

## BACKGROUND

This matter relates to the termination of Plaintiff's employment from Washington State University ("WSU") following the determination that Plaintiff's religious exemption from the COVID-19 vaccine could not be accommodated. ECF No. 1-1.  The following facts are drawn from Plaintiff's Amended Complaint and construed in a light most favorable to Plaintiff.  *Shwarz v. United States*, 234 F.3d 428, 436 (9th Cir. 2000).

Plaintiff Nicholas Rolovich was the head football coach for WSU from January 14, 2020 until he was terminated on December 6, 2021.  ECF No. 1-1 at 75, ¶ 11.  WSU is an agency of the State of Washington, located in Pullman, Washington.  *Id*., ¶ 12.  Defendant Patrick Chun is the Athletics Director for WSU. *Id*., ¶ 13.  Plaintiff and WSU entered an employment contract on January 13, 2020. *Id*., ¶ 16.  The contract was due to expire on June 30, 2025.  *Id*.  The contract provides that WSU could terminate Plaintiff's employment at any time without just cause, but such termination would trigger a liquidated damages provision, entitling

Plaintiff to "liquidated damages in an amount equal to sixty percent (60%) of the remaining base salary due under the terms of the Agreement." *Id*., ¶ 17.  The contract also provided that WSU could terminate Plaintiff's employment at any time for just cause if Plaintiff was found to be in violation of the just cause provisions. *Id*., ¶ 18.

Beginning on or around May 24, 2021, Plaintiff indicated to Chun he was not planning to receive a COVID-19 vaccine. *Id*. at 79, ¶ 31.  On August 16, 2021, Chun informed Plaintiff that Governor Inslee was planning to issue a vaccine mandate, which would have a high threshold for religious exemption requests. *Id*. at 80, ¶ 34.  At the time, WSU permitted its employees to refuse vaccination for personal/religious reasons. *Id*. at 79–80, ¶ 33.  Chun indicated the Governor's mandate would eliminate the personal exemption option. *Id*. at 80, ¶ 34.  Chun further informed Plaintiff he would be terminated with cause on October 19, 2021 if he did not get vaccinated. *Id*., ¶ 35.

On August 19, 2021, Chun called Plaintiff to a meeting. *Id*. at 81, ¶ 38.  During what was apparently a heated exchange, Chun pressed Plaintiff about his reasons for not getting vaccinated to which Plaintiff responded he was not comfortable discussing his reasons, citing privacy concerns. *Id*., ¶ 39.  Plaintiff then inquired about obtaining a religious exemption under WSU's policies. *Id*. at 82–83, ¶¶ 42–47.

The Governor issued Proclamation 21-14 on August 20, 2021, which required all applicable state employees to get fully vaccinated by October 18, 2021. *Id*. at 83, ¶ 48. Thereafter, WSU established a new process for employee exemption requests. *Id*. at 86, ¶ 59. The process entailed a two-step blind review. *Id*. at 87, ¶ 61. At the first step, the employee's exemption application was reviewed by a committee who did not know the employee's identity. *Id*. If the exemption was approved, the request moved to the second step where a determination was made regarding the employee's ability to safely perform the duties of his or her job without risking the health and safety of the community. *Id*. As the process applied to Plaintiff, if his exemption application was approved, his identity would be disclosed by Human Resources ("HR"), who would then send the exemption request to Plaintiff's supervisor to make the accommodation determination. *Id*., ¶ 62. Plaintiff's supervisor was Defendant Chun.

Plaintiff submitted his exemption request application on September 28, 2021. *Id*. at 88. ¶ 63. On October 6, 2021, HR notified Chun that it was considering approval of Plaintiff's exemption request and Chun would need to determine whether the Athletics Department would be able to accommodate the exemption request. *Id*., ¶ 65. Chun responded on October 13, 2021 with two memoranda. *Id*., ¶ 66. In the first, Chun indicated the Athletics Department would not be able to accommodate Plaintiff's exemption. *Id*., ¶ 67. The second memo

1  expressed concerns about Plaintiff's claimed religious beliefs.  *Id*.  On October 14,

2  2021, WSU's Department of Environmental Health and Safety ("EH&S")

3  responded to Chun's memos, detailing the proposed accommodations for

4  Plaintiff's exemption.  *Id*. at 89, ¶ 68.  Chun rejected the proposed

5  accommodations, stating the accommodations would create an undue hardship.

6  *Id*., ¶ 70.

7         On October 18, 2021, HR notified Plaintiff that his religious exemption

8  request would not be approved.  *Id*. at 94–95, ¶ 91.  The notice indicated there

9  were questions about the timing of Plaintiff's asserted religious beliefs and that

10  Plaintiff's accommodations would create an undue hardship to WSU.  *Id*. at 94, ¶¶

11  91–92.  That same day, Plaintiff received a Notice of Intent to Terminate with Just

12  Cause from Chun.  *Id*., ¶ 93.  Plaintiff appealed the termination to WSU President

13  Schulz in accordance with the procedures outlined in his employment contract.  *Id*.

14  at 74, ¶ 5.  President Schulz ultimately denied the appeal, which became the final

15  decision of WSU, on December 6, 2021.  *Id*.

16         On or about February 14, 2022, Plaintiff filed a complaint with the EEOC

17  and received a right to sue letter on August 16, 2022.  *Id*. at 74–75, ¶¶ 6–7.

18  Plaintiff filed a Complaint in Superior Court in Whitman County, Washington on

19  November 14, 2022, raising eight causes.  *Id*. at 26–33, ¶¶ 95–149.  Six causes of

20  action related to religious discrimination under state and federal law (Counts II, III,

and V–VIII), one cause of action alleged state wage law violations (Count IV), and the final cause of action alleged common law breach of contract (Count I). *Id*. The Complaint was never served on Defendants. ECF No. 1 at 2, ¶ 1 n.1.

Plaintiff served an Amended Complaint and Summons with Defendants on December 9, 2022. *Id*., ¶ 2. The Amended Complaint raises seven of the eight original causes of action; Plaintiff abandoned the state wage law claim. ECF No. 1-1. Defendants removed the action to this Court on December 14, 2022 pursuant to 28 U.S.C. §§ 1331, 1332. ECF No. 1 at 2–3, ¶¶ 3–4. In the present motions, Defendants Inslee, Chun, and WSU seek dismissal of all claims asserted against them. ECF Nos. 21, 22. Plaintiff does not oppose dismissal of Defendant Inslee or dismissal of Counts III, VI, and VII asserted against Defendants WSU and Chun. ECF No. 28 at 8 n.1. Accordingly, the Court will address only Counts I, II, IV, and V as alleged against Defendants WSU and Chun.

## DISCUSSION

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." A 12(b)(6) motion will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  While the plaintiff's "allegations of material

fact are taken as true and construed in the light most favorable to the plaintiff" the

plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences

… to defeat a motion to dismiss for failure to state a claim."  *In re Stac Elecs. Sec.*

*Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).  That is,

the plaintiff must provide "more than labels and conclusions, and a formulaic

recitation of the elements."  *Twombly*, 550 U.S. at 555.

When deciding, the Court's review is limited to the complaint, documents

incorporated into the complaint by reference, and judicial notice.  *Metzler Inv.*

*GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

**A. Title VII, 42 U.S.C. § 2000e, et seq. (Count IV)**

Plaintiff clarified at oral argument that he is pursuing Count IV only as to

Defendant WSU.  Defendant seeks dismissal of the claim, arguing Plaintiff has not

adequately pleaded a religious-based objection to the COVID-19 vaccine.  ECF

No. 22 at 25.  Plaintiff argues the determination of whether his objections were

religious based is a sincerity inquiry, which is inappropriate on a motion to

dismiss.  ECF No. 28 at 21.

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in

relevant part:

> It shall be an unlawful employment practice for an employer . . . to
> discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion . . . or national origin. . . .

42 U.S.C. § 2000e–2(a).  Title VII claims for a failure to accommodate are analyzed under a burden-shifting framework.  *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023).  First, a plaintiff must establish a prima facie case of failure to accommodate.  *Id*.  If the plaintiff is successful, the burden shifts to the defendant to show "it was nonetheless justified in not accommodating the employee's religious beliefs or practices."  *Id*.

To plead a prima facie case based on a failure-to-accommodate theory, the plaintiff must allege the following: (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) "the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements."  *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).

Defendant does not challenge the sincerity of Plaintiff's beliefs; rather, Defendant challenges the sufficiency of Plaintiff's pleadings with regard to the alleged conflict between his employment requirements and his religious beliefs. ECF Nos. 22 at 28; 31 at 9.  Plaintiff's Complaint states that he is a practicing Catholic and his "study of the Bible, personal prayer, . . . advice from a Catholic

priest, and the teachings of the Church . . . precluded him from receiving any available COVID-19 vaccine." ECF No. 1-1 at 78–79, ¶¶ 25, 29; *see also id*. at 99, ¶ 121.

Both the Ninth Circuit and the Supreme Court have cautioned against second-guessing the reasonableness of an individual's asserted religious beliefs. *Bolden-Hardge*, 63 F.4th at 1223; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (citation omitted). While a court need not accept at face value a plaintiff's conclusory assertions of violations of religious beliefs, "the burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge,* 63 F.4th at 1223. Plaintiff's claim that his Catholic faith informed his decision not to receive the COVID-19 vaccine is sufficient at the pleading stage to meet the prima facie element that he has a bona fide religious belief. Further, because Proclamation 21-14 imposed vaccination as a condition of employment for certain state employees, a religious-based objection to vaccination is sufficient to allege a conflict with employment duties. Taken together, Plaintiff has adequately pleaded the first element of the prima facie case for a failure to accommodate claim. Defendant does not challenge the remaining elements of Plaintiff's prima facie case.

After a plaintiff has established a prima facie case, the burden shifts to the defendant to demonstrate "either that it initiated good faith efforts to accommodate

reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) (citation omitted). Undue hardship is an affirmative defense. *Bolden-Hardge*, 63 F.4d at 1224. "What constitutes undue hardship must be determined within the particular factual context of each case." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). An accommodation may result in an undue hardship if there is "more than a de minimis cost to the employer . . . [or] more than a de minimis impact on coworkers." *Id.* The assertion of an undue hardship may not be premised on hypothetical or speculative hardships; there must be actual imposition or disruption. *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1238, 1243 (9th Cir. 1981). Dismissal premised on undue hardship is proper "only if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials." *Bolden-Hardge*, 63 F.4d at 1224 (citation and internal quotations omitted).

Defendant asserts that Plaintiff's accommodation request would have resulted in increased travel costs, harm to recruitment and fundraising efforts, and damage to WSU's reputation and donor commitments, in addition to an increased risk of exposure to COVID-19 to student athletes and other coaching staff. ECF No. 22 at 26. To a degree, these hardships are reflected in Plaintiff's Complaint.

For example, Plaintiff cites a memo from WSU's Department of Athletics, indicating WSU had "already lost significant donor commitments who have withdrawn or withheld donations based on the vaccination decisions of the football staff," and the remote attendance at a media day "became a major story and embarrassment to WSU" and also caused "significant decline in attendance."  ECF No. 1-1 at 89, ¶ 70.  The memo also indicated "many media stories concerning the Football Program revolve around the unvaccinated status of the head coach (and assistant coaches)" and "[t]he damage to the mission and reputation of the University posed by this situation cannot be understated [sic], nor can it be resolved by accommodation."  *Id.* at 89–90, ¶ 70.

While these claims of undue hardship may be supported by evidence not presently before the Court, they are insufficient on their own to support a finding that Plaintiff's accommodation would have imposed an undue hardship.  Defendant does not cite to any other facts or evidence referenced by the pleadings that would constitute "some obvious bar to securing relief on the face of the complaint." *Bolden-Hardge*, 63 F.4d at 1224.  Defendant's claimed undue hardship is better reserved for summary judgment.  The Court finds Plaintiff has adequately stated a claim for failure to accommodate in violation of Title VII.

//

//

1    **B.  WLAD (Count II)**

2    Count II is also alleged only against Defendant WSU.  The requirements to

3    state a claim for a failure to accommodate under the WLAD are substantially

4    similar to those under Title VII.  *See Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d

5    481 (2014).  Accordingly, Plaintiff has plausibly alleged a failure to accommodate

6    under WLAD.

7    **C. Section 1983 (Count V)**

8    Count V is asserted against Defendant Chun.  Plaintiff alleges Chun violated

9    his free exercise of religion rights under the First Amendment and his due process

10    rights under the Fourteenth Amendment.  ECF No. 1-1 at 100–01, ¶¶ 130–39.

11    Defendant moves for dismissal of the claim on the grounds that Plaintiff has not

12    alleged specific conduct necessary to plead a Section 1983 claim and because

13    Defendant Chun is entitled to qualified immunity.  ECF No. 22 at 36–37.

14    Although Plaintiff purports to bring the claim against Defendant Chun in his

15    individual capacity, the cause of action clearly states "[a]ll of the acts of Defendant

16    Chun were conducted by him under color and pretense of the statutes, regulations,

17    customs, policies and/or usages of the State of Washington and Washington State

18    University."  ECF No. 1-1 at 100, ¶ 131; at 75, ¶ 13.  Accordingly, the Court will

19    evaluate Plaintiff's claim asserted against Defendant Chun in his official capacity.

20

1    A section 1983 cause of action may be maintained "against any person

2    acting under color of law who deprives another 'of any rights, privileges, or

3    immunities secured by the Constitution and laws' of the United States." *S. Cal.*

4    *Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C.

5    § 1983).  The rights guaranteed by section 1983 are "liberally and beneficently

6    construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y.*

7    *City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

8    Section 1983 requires a claimant to prove "(1) that a person acting under

9    color of state law committed the conduct at issue, and (2) that the conduct deprived

10    the claimant of some right, privilege, or immunity protected by the Constitution or

11    laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).

12    "A person deprives another 'of a constitutional right, within the meaning of section

13    1983, if he does an affirmative act, participates in another's affirmative acts, or

14    omits to perform an act which he is legally required to do that causes the

15    deprivation of which the plaintiff complains.'" *Id.* at 633 (brackets and citation

16    omitted).  "In order for a person acting under color of state law to be liable under

17    section 1983 there must be a showing of personal participation in the alleged rights

18    deprivation: there is no *respondeat superior* liability under section 1983." *Jones v.*

19    *Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citation omitted).  Moreover, the

20    "inquiry into causation must be individualized and focus on the duties and

1  responsibilities of each individual defendant whose acts or omissions are alleged to

2  have caused a constitutional deprivation." *Leer,* 844 F.2d at 632–33.

3      Defendants do not dispute that Chun was acting under the color of state law.

4  Therefore, the claim turns on the second inquiry: whether Chun violated Plaintiff's

5  constitutional rights.

6          *1. Qualified Immunity*

7      Qualified immunity shields government actors from civil damages unless

8  their conduct violates "clearly established statutory or constitutional rights of

9  which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S.

10  223, 231 (2009) (citation omitted).  "Qualified immunity balances two important

11  interests—the need to hold public officials accountable when they exercise power

12  irresponsibly and the need to shield officials from harassment, distraction, and

13  liability when they perform their duties reasonably." *Id.*  In evaluating a state

14  actor's qualified immunity assertion, a court must determine (1) whether the facts,

15  viewed in the light most favorable to the plaintiff, show that the defendant's

16  conduct violated a constitutional right; and (2) whether the right was clearly

17  established at the time of the alleged violation such that a reasonable person in the

18  defendant's position would have understood that his actions violated that right.

19  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S.

20  at 227.

A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of the case. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).

### a. Free Exercise of Religion

Defendant argues Plaintiff has failed to allege any facts to support his claim that Chun violated his free exercise rights under the First Amendment. ECF No. 22 at 38. The Court agrees it is not evident from the cause of action what conduct Chun undertook to violate Plaintiff's Frist Amendment rights; the cause of action merely outlines the elements of a Section 1983 claim. ECF No. 1-1 at 100–01, ¶¶ 132, 134, 138. Pleadings that offer only a "formulaic recitation of the elements of a cause of action" are insufficient to meet the requirements of Rule 8. *Iqbal*, 556 U.S. at 678 (citation omitted). However, because all material facts are taken as true and viewed in a light most favorable to Plaintiff on a Rule 12(b)(6) motion, the Court will read beyond the cause of action to determine if Plaintiff has alleged any facts to support the claim.

To state a claim under the Free Exercise Clause, a plaintiff must show the challenged government action "substantially burdens a religious practice and either is not justified by a substantial state interest or is not narrowly tailored to achieve

that interest." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 890 (9th Cir. 2022). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791 F.3d at 1031–32. Notably, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021), *reconsideration en banc denied,* 22 F.4th 1099 (9th Cir. 2022) (citation omitted).

Plaintiff argues the pleaded facts allow the Court to infer Chun violated Plaintiff's free exercise rights by attempting to coerce Plaintiff to get vaccinated, then compelling WSU to overturn its determination that Plaintiff was entitled to a religious exemption, which then led to WSU's termination of Plaintiff's employment because of his religious beliefs. ECF No. 28 at 23. According to the pleadings, the earliest Plaintiff revealed to Chun that he had any sort of religious beliefs was during a meeting on August 19, 2021. ECF No. 1-1 at 81, ¶ 39. Plaintiff admits he had not previously disclosed having religious beliefs, claiming his faith was "a very personal matter" and he was not comfortable discussing it

with his supervisor.  *Id*. at 82, ¶ 41.  Consequently, any allegations of coercion prior to that date cannot support a free exercise claim because it was not evident that Plaintiff possessed religious beliefs.

During the August 19, 2021 meeting, Plaintiff initially declined to discuss his reasons for not getting vaccinated, citing privacy concerns.  *Id*. at 81, ¶ 39.  The discussion became heated and Chun allegedly informed Plaintiff he had two choices: get vaccinated or resign.  *Id*., ¶ 40.  After Chun indicated Plaintiff's employment would be terminated for failing to get vaccinated, Plaintiff asked generally about WSU's religious exemption process.  *Id*., ¶ 42.  The discussion that followed appears to have revolved around Plaintiff's plan to apply for a religious exemption.  *Id*., ¶¶ 43–47.  Notably, it is unclear from the pleadings whether Plaintiff explicitly revealed his religious-based reasons for not getting vaccinated, or merely hinted at them through his expressed desire for a religious-based exemption.

The Court is unable to infer from these facts that Chun "coerced" Plaintiff into getting vaccinated.  Even if Chun personally disagreed with Plaintiff's reasons for not getting vaccinated and urged Plaintiff to comply with the Proclamation, his actions do not rise to a constitutional violation.  First, the vaccination requirement was promulgated by the governor's Proclamation, which specified that any applicable employee who failed to receive the vaccination or an exemption by the

stated deadline would not be permitted to continue their employment with the State.  Chun's repeated statements to Plaintiff that his employment would be terminated with just cause for failing to comply with the vaccination requirements were in accord with the Proclamation.  *Id*. at 80–81, ¶¶ 35, 38, 40.  This Court and many others around the country have consistently found COVID-19 vaccine mandates for state employees are facially neutral and generally applicable, and terminating an employee for failing to comply with a vaccine mandate is a permissible employment action.  *See, e.g.*, *Does 1-6 v. Mills*, 566 F. Supp. 3d 34, 48 (D. Me.), *aff'd,* 16 F.4th 20 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills*, 142 S. Ct. 1112 (2022); *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *2 (E.D. Wash. Oct. 25, 2021); *Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *3 (W.D. Wash. May 27, 2022).

Second, there is no indication Chun told Plaintiff he could not apply for a religious exemption or undertook actions to prevent Plaintiff from applying for the exemption.  Even taking Plaintiff's allegations of Chun's hostility as true, the facts do not demonstrate Chun undertook actions to substantially burden Plaintiff's practice of religion.  Mere hostility is insufficient to demonstrate the level of coercion necessary to maintain a Section 1983 claim for free exercise violation.  *See Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1543 (9th Cir. 1985) (Canby, J., concurring) ("[G]overnmental actions that merely offend . . . religious

1  beliefs do not on that account violate free exercise.  An actual burden on the . . .

2  exercise of religion is required.").

3       Turning to Plaintiff's claim that Chun "compelled" WSU to reverse its

4  decision regarding Plaintiff's religious exemption, there are no facts indicating

5  Chun acted impermissibly.  First, by Plaintiff's own pleadings, Chun's

6  participation in the review process was required by WSU's policies.  ECF No. 1-1

7  at 88, ¶ 65.  The pleadings also indicate Chun followed the prescribed policies to

8  determine whether Plaintiff's proposed exemption and accommodations would

9  allow him to fulfill his job duties while ensuring the safety of the community and

10  those around him.  *Id.*, ¶¶ 69–70.

11       Next, Plaintiff alleges Chun improperly expressed concern regarding

12  Plaintiff's sincerely held religious beliefs.  ECF No. 23 at 33.  However, the letter

13  from HR regarding Plaintiff's exemption request indicated Plaintiff's supervisor

14  was required to contact HR to let them know if: (1) there were no concerns about

15  the request; (2) the request could not be accommodated; (3) the request could be

16  accommodated but additional measures were necessary; and/or (4), the supervisor

17  had questions or would like to meet to discuss further.  *Id.* at 27.  Accordingly, any

18  concerns or reservations expressed by Chun to WSU were within the scope of the

19  exemption review process.  There are no facts indicating Chun "compelled" WSU

20  to overturn its exemption and accommodation determination.

1      Finally, there are no facts to support Plaintiff's claim he was terminated

2  because of his religious views.  As the exemption determination letter indicates,

3  Plaintiff's employment was terminated for failing to comply with the

4  Proclamation.  *Id*. at 48.  Moreover, the final determination regarding Plaintiff's

5  employment was not made by Chun, it was made by the university President on

6  behalf of WSU.  *Id*. at 62–64.

7      Viewing the facts in the Amended Complaint in a light most favorable to

8  Plaintiff, the Court is unable to infer Chun substantially burdened Plaintiff's ability

9  to freely exercise his religion.  While the Ninth Circuit has cautioned that resolving

10  claims of qualified immunity at the motion-to-dismiss stage can "sometimes

11  present special problems for legal decision making," particularly where the court is

12  aided only by the facts contained in the complaint, a Rule 12(b)(6) dismissal may

13  be appropriate if the court can determine, based on the complaint itself, that

14  qualified immunity applies.  *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th

15  867, 893 (9th Cir. 2022).

16      Here, Plaintiff has alleged facts that demonstrate Chun participated in the

17  exemption review process, as required by WSU, and that Chun's actions during the

18  review process, even his questions regarding the sincerity of Plaintiff's religious

19  beliefs, were permissible under the process.  Even viewing the alleged facts in the

20  light most favorable to Plaintiff, the Court is unable to conceive of any additional

1  facts that would deprive Chun of immunity, particularly given the Court's

2  familiarity with the Proclamation and its applicability to state employees.  *See*

3  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988).

4        Accordingly, the Court concludes it is evident from the Amended Complaint

5  that Chun is entitled to qualified immunity with regard to Plaintiff's Section 1983

6  claim alleging violation of free exercise of religion.  The Court further determines

7  amendment would be futile, particularly where Plaintiff has already amended his

8  complaint once and has had ample opportunity to plead additional facts to clarify

9  his causes of actions.  *United States v. Corinthian Colls.,* 655 F.3d 984, 995 (9th

10  Cir. 2011).  Permitting Plaintiff additional opportunities to amend would create

11  undue delay and prejudice to Defendant.

12        b.  Due Process

13        Defendant similarly argues that Plaintiff fails to allege a viable due process

14  claim and even if he did, Chun is entitled to qualified immunity.  ECF No. 22 at

15  40.  Plaintiff claims to hold a constitutionally protected property interest in the

16  liquidated damages provision of his employment contract and the continuation of

17  his employment.  ECF No. 28 at 24–25.  As with Plaintiff's free exercise claim, it

18  is not clear from the cause of action what facts support this claim; Plaintiff merely

19  states the elements of the claim, which is insufficient under Rule 8.  ECF No. 1-1

20  at 100–01, ¶¶ 133, 136, 137; *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff's

1   Response clarifies his claim is premised on Chun's "disruption and violation of

2   WSU's blind review process."  ECF No. 28 at 24.  The Court will consider the

3   facts outside the cause of action to determine if Plaintiff's claim is viable.

4        Under the Fourteenth Amendment, "[a] procedural due process claim has

5   two distinct elements: (1) a deprivation of a constitutionally protected liberty or

6   property interest, and (2) a denial of adequate procedural protections." *Brewster v.*

7   *Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

8   Property interests "are created and their dimensions defined by existing rules or

9   understandings that stem from an independent source such as state law—rules or

10  understandings that secure certain benefits and that support claims of entitlement to

11  those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

12  "To have a property interest in a benefit, a person clearly must have more than an

13  abstract need or desire for it.  He must have more than a unilateral expectation of

14  it.  He must, instead, have a legitimate claim of entitlement to it." *Id.*; *Crawford v.*

15  *Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1090 (9th Cir. 2019)

16  (citations omitted).

17       Plaintiff appears to assert that state contract law provides entitlement to his

18  claimed property interests.  ECF No. 28 at 23–24.  Nonetheless, Plaintiff does not

19  plead any facts from which the Court could infer Chun interfered with the blind

20  review process to deprive Plaintiff of his property interests.  Beginning with

Plaintiff's property interest in his continued employment, as previously discussed, Chun's participation in the review process was not only permissible but necessary according to WSU's policies. Under the blind review process, all employee religious exemption requests were submitted to a review committee that evaluated the requests without knowing the identity of the requesting individual. ECF No. 1-1 at 87, ¶ 61. If an exemption was considered for approval, the request moved to an accommodation review where a determination was made as to whether an employee could perform their job duties without risking the health and safety of the community. *Id*. The process as it pertained to Plaintiff was clarified by WSU Vice President for Communications, who indicated Plaintiff's blind request, if approved, would be sent to HR, which would identify the employee in question and send an email to Plaintiff's supervisor. *Id*., ¶ 62. The supervisor would then determine whether Plaintiff could effectively perform his job while keeping the community safe. *Id*.

In accordance with the review process, Plaintiff submitted his exemption request on September 28, 2021. *Id*. at 88, ¶ 63. On October 6, 2021, following the blind review portion of the process, HR notified Chun that Plaintiff was entitled to a religious exemption. *Id*., ¶ 64. HR provided a list of proposed accommodations that included masking, social distancing, and testing. *Id*., ¶ 65. HR indicated the Athletics Department would need to determine whether it could accommodate the

exemption request.  *Id*.  On October 13, 2021, Chun, on behalf of the Athletic

Department, indicated the department could not accommodate the request.  *Id*., ¶

66.  Chun challenged the determination that Plaintiff was entitled to a religious

accommodation and urged the committee to reevaluate Plaintiff's claimed religious

beliefs.  *Id*. at 89, ¶ 67.  Chun received a response from the Department of

Environmental Health and Safety on October 14, 2021 detailing the exemption

request evaluation process and outlining the proposed accommodations.  *Id*., ¶ 68.

Chun then rejected the proposed accommodations, stating the accommodations

would not ensure Plaintiff's safety or the safety of others with whom Plaintiff

would come into contact.  *Id*., ¶ 70.  Chun also indicated the accommodation

would impose an undue hardship, citing loss of donor commitments, poor

attendance at press conferences, and reputational damage to WSU.  *Id*.

On October 18, 2021, Plaintiff received an email from HR stating WSU had

determined his exemption request would not be approved.  *Id*. at 94, ¶ 90.  Plaintiff

was then provided a Notice of Intent to Terminate with Just Cause.  *Id*. at 95, ¶ 93.

These facts do not support Plaintiff's claim that Chun impermissibly

interfered in the exemption review process.  Chun participated as required under

the prescribed procedures, and his determination regarding Plaintiff's requested

exemption and accommodations was also in accordance with the procedures.

Moreover, Chun did not make the final determination regarding Plaintiff's

employment.  As indicated by Plaintiff's employment agreement and the Decision on Appeal of Termination for Just Cause letter, President Schulz made the final determination, which constituted the final decision of WSU.  ECF Nos. 23 at 64; 1-1 at 42.  The Court is unable to infer Chun impermissibly interfered with the review process, thereby depriving Plaintiff of his property interest in his continued employment.

As to Plaintiff's claimed property interest in the liquidated damages provision of his contract, the plain language of the employment contract stipulates that the liquidated damages provision would trigger in the event that Plaintiff's employment was terminated without just cause.  ECF No. 1-1 at 43.  Without a final judgment finding Plaintiff was terminated without just cause, Plaintiff has no present entitlement to that money.  *Pac. Mech. Corp. v. City of San Luis Obispo*, 359 F. App'x 720, 721 (9th Cir. 2009).  Therefore, Chun could not have interfered with this claimed property interest.

The Court finds it is evident from the Amended Complaint that Chun is entitled to immunity with regard to Plaintiff's due process claim.  As with Plaintiff's free exercise claim, the Court is unable to conceive of additional facts that would deprive Chun of immunity.  Fed. R. Civ. P. 15(a)(2); *Balistreri*, 901 F.2d at 701.  Accordingly, amendment of this claim would be futile, would

1  prejudice Defendants, and would cause undue delay.  *Corinthian Colls.*, 655 F.3d

2  at 995.

3  **D. Contract Claim (Count I)**

4  Plaintiff clarified at oral argument he is pursuing Count I only as to

5  Defendant WSU.  Defendant seeks dismissal of Plaintiff's claim for breach of

6  contract and implied covenant of good faith and fair dealing on the grounds that

7  WSU had just cause to terminate Plaintiff's employment.  ECF No. 22 at 50.

8  Plaintiff seems to argue WSU did not have just cause to terminate his employment

9  because (1) his employment contract did not require him to receive the COVID-19

10  vaccine, and (2) he had sincerely held religious beliefs that precluded him from

11  receiving the vaccine and entitling him to a religious exemption; therefore, his

12  employment could not be terminated for failing to comply with the Proclamation.

13  ECF No. 28 at 17–22.

14  In Washington, "just cause" is defined as "a fair and honest cause or reason,

15  regulated by good faith on the part of the party exercising the power."  *Baldwin v.*

16  *Sisters of Providence in Washington, Inc.*, 112 Wash. 2d 127, 139 (1989).  When

17  an employee is discharged for "just cause," the discharge may not be "arbitrary,

18  capricious, or illegal" and must be based on facts that are supported by substantial

19  evidence and are reasonably believed by the employer to be true.  *Id.*

20

1    First, Plaintiff's argument that his employment contract did not require him

2    to receive a COVID-19 vaccine is meritless.  Plaintiff's contract required him to

3    "abide by all provisions of law."  ECF No. 1-1 at 36.  The Proclamation imposed

4    vaccination as an employment condition for all applicable state employees unless

5    the employee received an exemption and accommodation.  As such, Plaintiff was

6    required to get vaccinated or apply for and receive an exemption and

7    accommodation from his employer.

8    Turning to Plaintiff's second argument, WSU ultimately determined Plaintiff

9    was not entitled to an exemption and accommodation.  ECF No. 1-1 at 94, ¶ 90.

10   The cited reasons included questions about Plaintiff's asserted religious beliefs that

11   precluded him from obtaining a vaccine, particularly the timing of the assertions,

12   and the imposition of an undue hardship on WSU if it were to accommodate

13   Plaintiff's religious exemption.  ECF No. 23 at 48.  As previously discussed, the

14   Court is unable to determine from the Amended Complaint and all incorporated

15   materials that Plaintiff's accommodations would have imposed an undue hardship;

16   a more complete evidentiary record is necessary for such a determination.  If there

17   is insufficient evidence to prove an undue hardship, Defendant's claimed just cause

18   may not be "a fair and honest cause or reason, regulated by good faith."  *Baldwin*,

19   112 Wash. 2d at 139.  Because Plaintiff's breach of contract claim rests on the

20   determination of whether Plaintiff's exemption and accommodation would have

imposed an undue hardship, the Court determines Plaintiff's contract claim is also more appropriately resolved at summary judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Inslee's Motion to Dismiss (ECF No. 21) is **GRANTED**.  All claims asserted against Defendant Inslee are **DISMISSED with prejudice**.

2. The Clerk of Court is directed to **TERMINATE** Defendant Inslee from this action and adjust the docket sheet accordingly.

3. Defendants Chun and WSU's Motion to Dismiss (ECF No. 22) is **GRANTED in part and DENIED in part**.  Counts III, VI, and VII asserted against all Defendants are **DISMISSED with prejudice**.  Count V asserted against Defendant Chun is **DISMISSED with prejudice**.

4. The Clerk of Court is directed to **TERMINATE** Defendant Chun from this action and adjust the docket sheet accordingly.

5. Counts I, II, and IV asserted against Defendant WSU remain pending.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED May 30, 2023.



THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS TO DISMISS ~ 28