UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| NICOLAS ROLOVICH, Plaintiff, | ) | Case No. 2:22-cv-00319-TOR |
| vs. | ) | August 28, 2024<br>Spokane, Washington |
| WASHINGTON STATE UNIVERSITY, an agency of the State of Washington, | ) | Telephonic Discovery Dispute Hearing |
| Defendant. | ) | Pages 1 - 13 |

BEFORE THE HONORABLE THOMAS O. RICE
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff:

ERIC JOB SEESE
Frost Brown Todd LLP
1801 California Street
Suite 2700
Denver, CO 80202

BRIAN FAHLING
Law Office of Brian Fahling
559 Old Mill Road
Sandpoint, ID 83864

ERIC N. KNIFFIN
Kniffin Law PLLC
102 South Tejon Street
Suite 1100
Colorado Springs, CO 80903

MAMIE LING
Frost Brown Todd LLP
1801 California Street
Suite 2700
Denver, CO 80202

For the Defendant:

ZACHARY J. PEKELIS
Pacifica Law Group
1191 2nd Avenue
Suite 2000
Seattle, WA 98101

SPENCER W. COATES
Attorney General's Office
800 Fifth Avenue
Suite 2000
Seattle, WA 98104

Official Court Reporter:

Crystal L. Gonzalez, CRR, RPR
United States District Courthouse
P.O. Box 700
Spokane, Washington 99210
(509) 458-3434

Proceedings reported by mechanical stenography; transcript produced by computer-aided transcription.

(Court convened on August 28, 2024, at 8:15 a.m.)

THE COURTROOM DEPUTY: The matter now before the Court is *Nicholas Rolovich v. Washington State University*, Case No. 2:22-cv-0319-TOR. This is the time set for a telephonic discovery dispute hearing.

Counsel, please state your appearances for the Court and record, beginning with the Plaintiff.

MR. FAHLING: Brian Fahling for Plaintiff Nicholas Rolovich.

MR. SEESE: Job Seese on behalf of Plaintiff.

(Unintelligible simultaneous crosstalk.)

MS. LING: -- on behalf of Plaintiff.

MR. KNIFFIN: Eric Kniffin on behalf of Plaintiff.

MR. PEKELIS: Zach Pekelis on behalf of Defendant Washington State University.

MR. COATES: (Poor audio quality.)

(Interruption by the Court Reporter.)

THE COURTROOM DEPUTY: Counsel, can you please repeat that for the court reporter?

MR. COATES: Apologies. Spencer Coates on behalf of Defendant.

THE COURT: Good morning, Counsel. This is Judge Rice. I've reviewed all the materials. I have a couple of questions to start out with.

Mr. Seese, how many devices are there that are subject to

the Defendant's request?

MR. SEESE: There are a total of four, your Honor; two Android devices and two iPhone devices.

THE COURT: And, Mr. Pekelis, who is going to pay for the forensic examination that you're requesting?

MR. PEKELIS: Your Honor, our request is that it come at Plaintiff's expense because it is due to Plaintiff's delay and inability to produce a complete set of documents that necessitate the forensic examination.

THE COURT: Well, Mr. Pekelis, did you receive the declaration of Michael Gutierrez from Consilio?

MR. PEKELIS: I did, your Honor.

THE COURT: Well, they've already paid for a forensic examination, and they used Cellebrite to retrieve whatever was available on those devices, so tell me how another forensic examination would discover relevant information.

MR. PEKELIS: Your Honor, we've been raising these deficiencies -- missing text messages, out of sequence text messages, empty messages for months, and we learned for the first time with Plaintiff's submission that they'd begun this investigation. And while that's encouraging, it's coming far too late in the process.

Now, as a compromise, we're willing to allow their vendor, Consilio, which has begun to investigate this, to serve as the independent examiner. But they haven't done nearly the work

that's required, which is to locate all of the missing and empty text messages, identify what the nature of that empty message is, whether -- if it actually represents substance, whether it's recoverable, and to recover it. So they really just scratched the surface because they've only begun this investigation days ago in response to our (poor audio quality) of the Court.

THE COURT: Well, Mr. Pekelis, I've read the declaration of Michael Gutierrez, and he indicates that all those messages are not saved on those devices.

MR. PEKELIS: No. What Mr. Gutierrez said is that the problem is likely -- and he doesn't make a declarative statement with respect to all of the messages. He said the problem is likely due to the data that's been collected, meaning what they have in their possession. Mr. Gutierrez has not examined the Plaintiff's devices. They've never -- as far as I can tell, they've never actually gone back to the devices and figured out, okay, what's on them now, is there a backup of those devices that was made in the past that might have messages on it that now appear to be missing? That's a step in the process they haven't ever undertaken based on the representations from Plaintiff's counsel, and that was the first and basic step in any forensic examination that's trying to uncover whether there is in fact lost data.

THE COURT: Counsel, for the Plaintiff, do you have any response?

MR. SEESE: Yes, your Honor. This is Job Seese.

I believe that understates what they have done. So Mr. Gutierrez and Consilio have gone back. There is backup data, and they were able to recover from their archives the entire UFEDR report that was created from Cellebrite, and they have -- that was the -- that was the source of our recent reproduction roughly a week and a half ago. And they have begun to go through on a spot basis to see if that missing data as it's rendered is in the raw data.

And so far, as Mr. Gutierrez alluded to in his declaration, and as we referenced on the fourth page of our -- actually the fifth page of our rebuttal to this letter, so far, their spot check has confirmed that that missing data is in fact missing from the raw data as well, and it -- meaning it doesn't exist, meaning there's actual -- the missing empty texts actually are empty texts.

And I'll let my colleague, Ms. Link, speak to that in more detail if the Court would like to hear in more detail.

MR. PEKELIS: Your Honor, may I briefly respond?

THE COURT: Who is speaking?

MR. PEKELIS: This is Mr. Pekelis.

THE COURT: Go ahead.

MR. PEKELIS: What Mr. Job -- what Mr. Seese is saying is that Consilio is going back to the data that they originally collected and concluding, well, these missing text messages

aren't in the data. What they're not doing is going to the phones, to the devices, and I -- and checking in a way that -- okay, this empty message was shown on the phone. What we see from paragraph 18 in Mr. Gutierrez's declaration is that oftentimes the empty message will represent some sort of attachment that you can see on the phone, but it just isn't collected in the data question. But the one example that they've given, and also in the attachment to their submission, there's no attachment showing, so there's obviously some other reason why that particular empty message is empty. And the way that you figure that out is by going back to the phone, recollecting the data, and seeing what's on the actual phones themselves. They haven't done that, and they should.

THE COURT: Well, Counsel for the Plaintiff, I'm inclined to have the defense submit those four devices to an independent forensic examination, but I'm also inclined to require the defense to pay for that examination. Do you have any objection to that?

MR. SEESE: No, your Honor.

THE COURT: All right.

MR. SEESE: I think we need to have -- I would suggest that we need to have some parameters around what that examination is going to examine. The only issue that has been raised is in connection with the cell phone. There's been -- there's been no suggestion that there's been any infirmity in

the process or that we've not followed the process to (poor audio quality.) So we are fine with that in concept. We just want some parameters, and I might suggest that the Court appoint a special master to oversee the process.

THE COURT: Well, Mr. Pekelis, who are you choosing as an independent forensic examiner?

MR. PEKELIS: We haven't gotten that far in the process. We have several firms that we've worked with in the past in mind, and we can identify certainly someone by the end of the day.

THE COURT: Well, the Court's ruling is this: Those four devices can be looked at by an independent examiner at the Defendant's -- or at the Defendant's choosing and at the Defendant's expense. So that's my court ruling on those four devices.

And then --

MR. SEESE: Your Honor, counsel for Plaintiff, Job Seese.

Just to clarify, will the -- the forensic examination we would request would be limited solely to text messages. There's been no issue raised with respect to the integrity or the way that the data has rendered from any other application.

THE COURT: Yeah. That would be my ruling. It's text messages and the attachments to those text messages.

MR. PEKELIS: Your Honor, if I may. I don't know if

Mr. Seese means this as well, but some of the messages appear to be in a text message format, but I believe they're in fact (poor audio quality) messages or other applications that look like text messages.

MR. SEESE: Yeah. We have no objection to that, your Honor.

MR. PEKELIS: We're on the same page.

THE COURT: Yeah. That would be my ruling. It's messages sent, and whether they're text messages or whatnot, that's the limit of what you can examine.

The next issue is the Plaintiff's issue regarding the attorney-client privilege and those documents. I've read all the briefing on this, and it seems to me that the defense has appropriately claimed the attorney-client privilege with respect to discussing issues with their attorneys, so I don't see a need for an in camera review, and I would ask the parties to consult with each other and see if this issue can be resolved.

Mr. Pekelis, anything else to add to that?

MR. PEKELIS: Not to that issue, your Honor.

With respect to the first issue, I just wanted clarity. We've also asked for an extension of time to take Plaintiff's deposition so that we can incorporate anything recovered from the forensic examination, as well as the right that our expert amend the report to incorporate any material produced after the report was made. But on the (poor audio quality) privilege

issue, no, nothing.

THE COURT: All right. Well, your other two issues, they're granted.

The parties asked me to change the schedule, and I entered an order for Plaintiff's motion for partial summary judgments due by September 23rd. That did not mean that discovery ended. So discovery is still open, and the parties may continue with their discovery.

As soon as the Court rules on the motions for summary judgment, I'll hear from the parties as to a date for trial, but in the meantime, discovery remains open.

Counsel for the Plaintiff, anything else to add?

MR. SEESE: Yes, your Honor. My colleague brings up I think a logistical issue that we should -- that would be helpful to clarify now with respect to the forensic examination. And we just want to clarify that the forensic examination will involve an attempt to essentially determine the source of these apparent gaps in the data that's been rendered, and Defendant will not be extracting from Defendant's phone -- or I'm sorry -- from Plaintiff's phones -- devices -- and producing documents. It would be limited simply to determining the source of this. If it's determined that they're gaps, then it would be part of Plaintiff's job to then reproduce those -- the missing data. Is that the Court's intent?

THE COURT: Well, it's the missing data, but some of

those text messages or emails or whatever could have an attachment, and they can produce that attachment.

MR. SEESE: Yes. Understood. Understood. Thank you for that clarification.

THE COURT: All right. Anything else we can accomplish at today's hearing?

MR. PEKELIS: One last thing from WSU, your Honor. I'm just a bit confused about the status of discovery. The Court entered an order setting a briefing schedule and vacating the trial date. We did not interpret the Court to also vacate the discovery cutoff, which was September 3rd for general purposes, and the Court had specially set earlier a September 6th cutoff for expert depositions. Am I to understand correctly that the cutoffs are now vacated?

THE COURT: The parties can continue discovery because of these issues, and the defense can provide a supplemental report if more information is obtained in discovery. I haven't set deadlines for the end of discovery, and those deadlines will be set after the Court rules on the summary judgment motions.

MR. PEKELIS: I see. So the parties are permitted to continue with discovery through the summary judgment briefing process?

THE COURT: If necessary.

MR. PEKELIS: Okay. Thank you, your Honor.

THE COURT: All right. That concludes today's

hearing. Thank you, Counsel, for being available by telephone.

(Proceedings concluded on August 28, 2024, at 8:31 a.m.)

C E R T I F I C A T E

I, CRYSTAL L. GONZALEZ, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Spokane, Washington;

That the foregoing proceedings were taken on the date and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true, and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings;

DATED this 4th day of September, 2024.

CRYSTAL L. GONZALEZ, CRR, RPR
Washington CCR No. 2955
Official Court Reporter
Spokane, Washington