BRIAN FAHLING, WSBA #18894
Law Office of Brian Fahling
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326

ERIC KNIFFIN
Kniffin Law PLLC
102 S. Tejon St., Suite 1100
Colorado Springs, CO 80903
(719) 212-4391

ERIC JOB SEESE
Frost Brown Todd LLP
1801 California Street, Suite 2700
Denver, CO 80202
(303) 406-4990

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLAS ROLOVICH,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE UNIVERSITY,<br><br>Defendant. | NO. 2:22-cv-00319<br><br>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE** |

PLAINTIFF'S STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
NO. 2:22-cv-00319-TOR

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

### A. Rolovich Consults with Religious Authorities and Reaches a Firm Conclusion about his Religious Duty

1. Plaintiff Nick Rolovich met Fr. Paul Heric, a Catholic priest and the Chaplain at the St. Thomas More Catholic Cougs Student Center at WSU, in July 2021. Kniffin Decl. Ex. A ¶¶ 2-3.

2. Over the summer of 2021, Rolovich came to count Fr. Paul as a friend and someone he looked to for advice and encouragement. Kniffin Decl. Ex. A. ¶¶ 5–7.

3. Rolovich credits Fr. Paul with helping him reconnect with the Catholic faith of his youth and grow closer to God. Kniffin Decl. Ex. A ¶ 8; Kniffin Decl. Ex. B at 6.

4. As part of their conversations, Rolovich asked Fr. Paul for spiritual direction and advice as to what to do with the conflict and confusion he was feeling in response to pressure to receive a COVID-19 vaccine. Kniffin Decl. Ex. A ¶ 9.

5. At first, Fr. Paul encouraged Rolovich to comply with WSU's wishes and get vaccinated. Kniffin Decl. Ex. A ¶ 10, Ex. B. at 5.

6. However, as Rolovich continued to share his thoughts and concerns with Fr. Paul, Fr. Paul told him that he needed to understand his decision about the vaccine in light of the Catholic Church's teaching on the conscience. Kniffin Decl. Ex. A ¶ 11.

7. When Rolovich told Fr. Paul he believed WSU would fire him unless he got a COVID vaccine, and that he was determined to follow what he understood as his religious obligation to decline, Fr. Paul responded,

> Ok. Then know you have my support. Your a man of great courage and conviction.

Kniffin Decl. Ex. B at 12-13.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 1

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

8. Fr. Paul shared with Rolovich selections from the Catholic Catechism on the conscience and encouraged Rolovich to spend time with them. Kniffin Decl. Ex. A ¶ 12; Kniffin Decl. Ex. B at 19-20.

9. Fr. Paul also shared with Rolovich moral guidance related to COVID-19 vaccines developed by the Diocese of Spokane. Kniffin Decl. Ex. A ¶ 13, Ex. B at 5.

10. Fr. Paul encouraged Rolovich to talk to his bishop, Bishop Daly, about how his Catholic faith related to my decision on the COVID vaccination. Kniffin Decl. Ex. A ¶ 14.

11. At Fr. Paul's prompting, Rolovich reached out to and spoke with Bishop Daly. Rolovich wrote to Fr. Paul,

> Talked with Bishop Daly today. He agreed to help. How God brought him back in my life is truly amazing. And you Father.

Kniffin Decl. Ex. B. at 18.

12. Bishop Daly later released a public letter testifying that he had known Rolovich in various capacities and that he saw Rolovich's growing relationship with Fr. Paul "as an expression of a renewed commitment to his relationship to God and the Church." Kniffin Decl. Ex. C.

13. Bishop Daly concluded his letter,

> Finally, I write this letter to shed light on one man's life of faith. I realize this is not easily explained nor often appreciated in the secular society and time in which we live. However, I believe Nick Rolovich is a man of faith who sincerely tries to live his life in a manner that seeks God's will. In time, I hope others will also see this important aspect of Nick's life.

Kniffin Decl. Ex. C.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 2

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

14. It was through Fr. Paul's counsel and through Rolovich's study of the Catholic materials that Fr. Paul provided him that Rolovich came to understand that he had a religious obligation as a Catholic to follow his conscience and decline to take a COVID vaccination. Kniffin Decl. Ex. A ¶ 16.

15. On several occasions, Fr. Paul encouraged and prompted Rolovich to submit a request for religious exemption to WSU. Kniffin Decl. Ex. A ¶ 17; Kniffin Decl. Ex. B at 24, 31, 34.

16. Fr. Paul continues to be a friend and mentor that Rolovich relies on for spiritual direction and encouragement. Kniffin Decl. Ex. A ¶ 18.

**B. Rolovich Informs Chun of Intent to File for Religious Exemption**

17. On August 19, 2021, the day after Governor Inslee announced a new COVID-19 vaccine mandate that covered WSU employees, Rolovich told WSU Athletics Director Pat Chun ("Chun") that he intended to seek a religious exemption from the new mandate. Kniffin Decl. Ex. D at 4.

18. In an email to the Board of Regents, WSU President Kirk Schulz acknowledged that the Rolovich "situation has made many of our alumni, fans, supporters, and employees angry, embarrassed, and eager for the administration (and me personally) to show some leadership." Kniffin Decl. Ex. D at 3.

**C. Rolovich Applies for Religions Exemption**

19. On October 4, 2024, Rolovich submitted his request for a religious exemption to WSU's Human Resource Services (HRS) office. Kniffin Decl. Ex. E at 3 *et seq*.

20. Rolovich's request for a religious exemption was based on a form letter prepared by the National Catholic Bioethics Center (NCBC), which he modified. Kniffin Decl. Ex. F ¶ 13.

PLAINTIFF'S STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
NO. 2:22-cv-00319-TOR - 3

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

21. The stated purpose of Rolovich's request was to "explain[] why [his] sincerely held religious beliefs prohibit [him] from accepting the vaccine, and why [he was] compelled to do so by the teachings of the Roman Catholic Church." Kniffin Decl. Ex. E at 7.

22. Rolovich's request articulated two separate religious grounds for his exemption request. First, Rolovich's request states, "An individual Catholic may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines." "The Roman Catholic Church teaches that I am required to refuse a medical intervention, including a vaccination, when my conscience has come to sure judgment that, as in this case, accepting the vaccine will make me complicit in the abortions that produced the human cell lines from which currently available vaccines are ultimately derived." Kniffin Decl. Ex. E at 7.

23. Second, Rolovich's request states that "a Catholic might refuse a vaccine based on the Church's teaching concerning therapeutic proportionality. Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including spiritual, psychological, and bodily goods. It can also extend to the good of others and the common good, which likewise entail spiritual and moral dimensions and are not reducible to public health." Kniffin Decl. Ex. E at 7.

24. Rolovich's request also states, "While my Bishop encourages vaccines, he also confirms that at the core of the Church's teaching are the first and last points listed above: vaccination is not a universal obligation, and a person must obey the judgment of his or her own informed and certain conscience." Kniffin Decl. Ex. E at 7.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 4

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

25. Rolovich's request also states, "Because I have come to an informed and sure judgment in conscience that I must not receive the vaccine, the Catholic Church requires that I follow this certain judgment of my conscience." Kniffin Decl. Ex. E at 8.

26. Rolovich supplemented his request with detailed references to the Catechism of the Catholic Church, the Second Vatican Council, a document from the Vatican's Congregation for the Doctrine of the Faith entitled "Note on the Morality of Using some Anti-COVID-19 Vaccines," and a document from United States Conference of Catholic Bishops Conference entitled "Ethical and Religious Directives for Catholic Health Services, 6th ed." Kniffin Decl. Ex. E at 9.

**D. Details regarding WSU's Review Process**

27. An article published in the WSU Insider on October 8, 2021, describes the process that WSU had established to review employees' requests for religious exemptions from the Governor's vaccine mandate. Kniffin Decl. Ex. G.

28. The WSU Insider article states, "For employees, the exemption requests go through a two-step process. The first is the blind review," "meaning the identities of the individuals of the individuals requesting exemptions are unknown to the members of the review committee except in instances when additional information is needed through follow-up contact." Kniffin Decl. Ex. G at 4.

29. The WSU Insider article states, "Employee religious requests are reviewed by a committee consisting of a team from WSU's Human Resource Services as well as the university's Office of Civil Rights and Compliance." Kniffin Decl. Ex. G at 4.

30. The WSU Insider article states, "The Washington Attorney General's Office is being consulted on criteria WSU is using to decide the exemption requests and

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 5

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

providing legal advice to both [the religious exemption request review committee and the medical exemption request review committee] as needed." Kniffin Decl. Ex. G at 4.

31. The WSU Insider article states, "Then, if an exemption is approved, the request moves to a separate accommodation review step where a determination is made whether the unvaccinated employee will be able to perform their duties without risking the health and safety of the community." Kniffin Decl. Ex. G at 4.

32. The WSU Insider Article states, "Employees are provided the opportunity to supply additional information before final decisions are made." Kniffin Decl. Ex. G at 4.

33. This same review process was also explained in an article written by sportswriter Jon Wilner, for which WSU President for Communications Phil Weiler was interviewed. Kniffin Decl. Ex. H.

34. According to the Wilner article, "The blind review was designed to create fairness for employees across all WSU campuses, regardless of position or salary." Kniffin Decl. Ex. H at 2.

35. According to the Wilner article, "If the exemption request were approved via the blind process, then his supervisor, athletic director Pat Chun, would determine if Rolovich could carry out his duties effectively and keep the public safe." Kniffin Decl. Ex. H at 3.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 6

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

### E. Washington State Human Resources' Guidance on Evaluating Religious Accommodation Requests

36. WSU's religious exemption review committee also relied on a document provided through the State Human Resources (SHR) division, entitled "Guidance on Evaluating Religious Accommodation Requests. Kniffin Decl. Ex. I.

37. This Guidance advises that "[w]hen reviewing [a] request [for religious exemption,] the agency should follow these abiding principles:

- Presume a religious belief to be sincerely held.

- Be cognizant that religious beliefs are not static and are susceptible to change over the course of a person's life.

- Remember the fact that an individual is not a frequent observer of their faith or had not previously made their faith public does not necessarily limit its sincerity."

Kniffin Decl. Ex. I at 4, ¶ 2.

38. This Guidance also notes that under "[f]ederal guidance on religious accommodation," an employer "should review the request on its own merits" and "initiate discussion with the employee about whether an employee's religious belief is sincerely held." Kniffin Decl. Ex. I at 4–5, ¶ 4.

39. The end of the Guidance includes, under "Resources," a link to Section 12 of the U.S. Equal Employment Opportunity Commission's (EEOC) Compliance Manual, Religious Discrimination, available at https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination. Kniffin Decl. Ex. I at 7.

40. The Guidance's "Resources" section also links to the EEOC's Technical Guidance, "What You Should Know About COVID-19 and the ADA, the

PLAINTIFF'S STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
NO. 2:22-cv-00319-TOR - 7

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

Rehabilitation Act, and Other EEO Laws," available at

https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. Kniffin Decl. Ex. I at 7.

### F. WSU Review Committee Approves Rolovich Exemption Request

41. On October 6, HRS notified the Athletics Department that WSU's review committee had "engaged in a good faith review" of Rolovich's application and had concluded that his exemption request was "based on a sincerely held religious belief." Kniffin Decl. Ex. J at 3.

### G. WSU Athletics Department Challenges Review Committee's Determination

42. On October 13, the Athletics Department submitted a letter to HRS challenging the review committee's conclusion that Rolovich's exemption request was based on a sincere religious belief. Kniffin Decl. Ex. K.

43. That letter claimed that "Rolovich has made several statements that cast doubt on his claimed sincerely held religious belief." Kniffin Decl. Ex. K at 5.

44. That letter concludes, "In sum, throughout the multiple individual and group meetings, Rolovich made it clear that he refused to be vaccinated based on the conclusions he reached through his own research, he only mentioned religion after the Governor issued the Proclamation requiring vaccination, and then only mentioned religion in reference to seeking an exemption from the vaccination requirement. We believe these facts support re-evaluation of the claimed sincerely held religious belief." Kniffin Decl. Ex. K at 6.

45. When HRS employee Bonnie Dennler received this memorandum, she promptly notified legal counsel. Kniffin Decl. Ex. L at 95:15-19.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 8

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

46. Any conversations that HRS had regarding Rolovich's request for a religious exemption request between the time HRS received this October 13 memorandum from the Athletics Department and when WSU gave Rolovich "Written Notice of Intent to Terminate for Just Cause" were conducted in the presence of legal counsel. Kniffin Decl. Ex. L at 108:22-111:24.

47. WSU's "review committee did not request additional information from Plaintiff regarding his asserted religious objection to the COVID-19 vaccines between the time he submitted materials in support of his religious accommodation request on October 3, 2021, and when WSU denied his request on October 18, 2021." Kniffin Decl. Ex. M at 6.

**H. WSU Gives Rolovich "Written Notice of Intent to Terminate for Just Cause"**

48. On October 18, Rolovich received an email from HRS stating that his request for a religious exemption had been denied. That email states in part, "Based on your comments, in conjunction with the timing of your request for a religious accommodation, the University questions the assertion that your sincerely held religious views conflict with the University's vaccine requirement." Kniffin Decl. Ex. N at 3.

49. Moments later, Chun hand delivered to Rolovich a letter giving him "Written Notice of Intent to Terminate for Just Cause," which said that his "failure to comply with the vaccination requirement . . . rendered [him] legally unable to perform [his] duties as Head Coach," said his "personal decision to forego a COVID-19 vaccination" amounted to a "deliberate and serious violation[]" of his contractual duties. Kniffin Decl. Ex. O at 3-4.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 9

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

**I. WSU Denies Rolovich's Administrative Appeals**

50. On November 2, pursuant to Paragraph 4.3 of his employment agreement, Rolovich appealed WSU's "Written Notice of Intent to Terminate for Just Cause" to Chun. ECF 29 at 27 *et seq*.

51. On November 12, Chun rejected Rolovich's appeal. Part of Chun's letter provides detail regarding "the University's decision that you do not have a sincerely held religious belief that conflicts with the University's vaccine requirement":

> Prior to the Governor's proclamation, and since the beginning of the pandemic, you openly and freely expressed your opposition to the vaccine and other COVID-19 mitigation efforts on numerous occasions to numerous people, citing your own "scientific" research and making statements mirroring several specific online conspiracy theories, which included demonstrably false claims. In addition, at no point did you ever mention any religious concerns (ex: regarding fetal tissue). Therefore, your current claim that your private, unexpressed concerns were actually religious in nature is simply not credible. Your statement that you and some of your staff had unsuccessfully tried to secure documentation for a medical exemption undermines your claim. Only *after* it became clear that a religious exemption was your only other option did you claim to have religious beliefs that conflict with the vaccine requirement. It is understandable that you would want the University's review to exclude information regarding your own prior statements in Its decision; however, under EEOC Guidance, these are appropriate considerations, and your assertion to the contrary is false. Further, under EEOC Guidance, personal or philosophical beliefs do not give an individual a basis to claim a religious exemption.

Kniffin Decl. Ex. P at 5.

52. On November 26, Rolovich filed a second administrative appeal to President Kirk Schulz. ECF 29 at 11 *et seq*.

53. On December 6, President Schulz responded to Rolovich's appeal by letter. That letter said in part, "The record in the written materials establishes that the

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 10

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

University had a legitimate basis to question whether you have a sincerely held religious belief, practice, or observance that conflicts with the vaccination requirement." Kniffin Decl. Ex. Q at 4.

54. President Schulz's letter ends, "In conclusion, your appeal is denied. Under Paragraph 4.3 of the Agreement, this is the final decision of the University." Kniffin Decl. Ex. Q at 5.

**J. WSU Expert Reports**

55. The Expert Report of Renee DiResta, prepared for Defendant WSU in this matter, concludes:

> Based on the above, it is my opinion that Mr. Rolovich indeed harbored significant reservations about being vaccinated for COVID-19, but the concerns he expressed in the private messages that I observed between him and his close associates throughout this period fall into the realm of safety concerns and conspiracy theories, rather than religious objections to vaccination.

Kniffin Decl. Ex. R ¶ 53.

56. The Expert Report of M. Theresa Lysaught, prepared for Defendant WSU in this matter, concludes:

> Thus, in my opinion, to conclude that a baptized Catholic could be "required" as a Catholic to refuse COVID-19 vaccination requires a significant distortion, misunderstanding, or misrepresentation of Catholic teaching.

Kniffin Decl. Ex. F ¶ 88.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 11

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

DATED this 23rd day of September 2024.

**LAW OFFICE OF BRIAN FAHLING**

/s/ Brian Fahling
Brian Fahling WSBA #18894
559 Old Mill Rd
Sandpoint, ID 83864
Tele: 425.802.7326
Email: bfahling@fahlinglaw.com

**KNIFFIN LAW PLLC**

/s/ Eric Kniffin
Eric Kniffin CO Bar # 48016
102 S. Tejon Street, Suite 1100
Colorado Springs, CO 80903
Tele: 719-212-4391
Email: eric@kniffin.law
*Admitted pro hac vice*

**FROST BROWN TODD LLP**

/s/ E. Job Seese
E. Job Seese, CO Bar # 48379
Michael A. Freimann, CO Bar #35430
Mamie Ling, CO Bar #49483
Meredith Grant, CO Bar #59667
1801 California Street, Suite 2700
Denver, CO 80202
Tele: 303.623.9000
jseese@fbtlaw.com
mfreimann@fbtlaw.com
mling@fbtlaw.com
mgrant@fbtlaw.com
Tele: (303) 406-4990
*Admitted pro hac vice*

*Attorneys for Plaintiff*

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE NO. 2:22-cv-00319-TOR - 12

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September 2024, I electronically filed the forgoing MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that none of the represented parties are non-CM/ECF participants.

By: /s/ E. Job Seese
E. Job Seese

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
NO. 2:22-cv-00319-TOR - 13

LAW OFFICE OF BRIAN FAHLING
559 Old Mill Rd
Sandpoint, ID 83864
(425) 802-7326
E: bfahling@fahlinglaw.com