# Exhibit E

**WSU_00000087-WSU_00000087**

**From:** "Rolovich, Nicholas R" <nick.rolovich@wsu.edu>
**To:** HRS Exemptions <hrs.exemptions@wsu.edu>
**Subject:** Religious exemption
**Date:** Mon, 4 Oct 2021 03:49:02 +0000
**Importance:** Normal
**Attachments:** 20211003190246720.pdf

---

Please see the attached exemption form and additional letter.

Nick Rolovich

**WSU_00000088-WSU_00000092**

WASHINGTON STATE UNIVERISTY
RELIGIOUS EXEMPTION REQUEST FORM
PROCLAMATION 21-14.1 (COVID-19 VACCINE REQUIREMENT)

Washington State University will provide reasonable accommodations to qualified applicants and employees with sincerely held religious beliefs, practice, or observance that conflict with job requirements, unless providing such accommodations would pose an undue hardship.

**Instructions for employees:**

Initiate request for religious accommodation in Workday. For instructions on completing the COVID-19 Vaccination Verification in Workday refer to COVID-19 Vaccination Verification for Workers.

Below are initial intake questions for you to respond to in requesting a sincerely held religious beliefs, practice, or observance exemption pursuant to Proclamation 21-14.1.

Claiming an exemption/accommodation based on false, misleading, or dishonest information is grounds for disciplinary action up to and including termination from employment.

Complete and return to Human Resource Services, Pullman, WA, no later than October 4, 2021. To avoid delay, you may submit the form by fax to: 509-335-1259 or email to hrs.exemptions@wsu.edu.   If you have any questions or need more information, please do not hesitate to contact your HRS Service Team.

**Questionnaire:**

1. Employee Name (Print): _Nicholas Rolovich_
   WSU ID#           : _11732456_

2. Describe the sincerely held religious belief, practice, or observance that is the basis for your request for a religious exemption/accommodation to WSU's COVID-19 vaccination requirement.

   *See attached*

3. Briefly explain how your sincerely held religious belief, practice, or observance conflicts with WSU's COVID-19 vaccination requirement.

   *See attached*

4. How long have you held the above religious belief, practice, or observance?

   *See attached*

Religious Exemption Request Form 9/1/2021
1

Exhibit E Page 5

WSU_00000088

WASHINGTON STATE UNIVERISTY
RELIGIOUS EXEMPTION REQUEST FORM
PROCLAMATION 21-14.1 (COVID-19 VACCINE REQUIREMENT)

5. If you have ever received a FDA authorized or approved vaccine at any time in your life, please explain how your sincerely held religious belief, practice, or observance causes you to object to the COVID-19 vaccine compared to other vaccines you received.

*See attached*

6. If the request for accommodation is temporary, please identify the anticipated date the accommodation is no longer needed: __life__

Washington State University may need to obtain additional follow up information about your strongly held religious belief(s) and/or discuss reasonable accommodations to WSU's COVID-19 vaccination requirement. Human Resource Services will reach out to you if additional information is needed to process this request.

I certify that I have read and understand the information provided in this request, and that I have truthfully completed it based on my knowledge, information, and belief. I understand that it is illegal to claim an exemption/ or accommodation on false, misleading, or dishonest grounds, including by providing false, misleading, or dishonest information when seeking an exemption/accommodation, and that any violations will be subject to appropriate legal enforcement and/or discipline.

_____
Employee Signature

__9/28/21__
Date

[Date]

To Whom It May Concern,

I am a baptized Catholic seeking an exemption from WSU's vaccine mandate. This letter explains why my sincerely held religious beliefs prohibit me from accepting the vaccine, and why I am compelled to do so by the teachings of the Roman Catholic Church.

I believe that abortion is the taking of innocent human life. The Roman Catholic Church teaches that I am required to refuse a medical intervention, including a vaccination, when my conscience has come to sure judgment that, as in this case, accepting the vaccine will make me complicit in the abortions that produced the human cell lines from which currently available vaccines are ultimately derived. While the Catholic Church, in principle, does not prohibit the use of vaccines, the following authoritative Church teachings provide the basis on which I have determined that I cannot accept the vaccination:

- Vaccination is not morally obligatory in principle and so must be voluntary. [1]
- There is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions.
- A person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Catholic moral teachings. [2]
- A person is morally required to obey his or her sure conscience.[3]

There is no authoritative Church teaching universally obliging Catholics to receive any vaccine. An individual Catholic may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines. More generally, a Catholic might refuse a vaccine based on the Church's teachings concerning therapeutic proportionality. Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of

the person, including spiritual, psychological, and bodily goods. [4] It can also extend to the good of others and the common good, which likewise entail spiritual and moral dimensions and are not reducible to public health. The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention in the concrete circumstances,[5] not by public health authorities or by other individuals who might judge differently in their own situations.

While my Bishop encourages vaccines, he also confirms that at the core of the Church's teaching are the first and last points listed above: vaccination is not a universal obligation, and a person must obey the judgment of his or her own informed and certain conscience. In fact, the *Catechism of the Catholic Church* instructs that following one's conscience is following Christ Himself:

> In all he says and does, man is obliged to follow faithfully what he knows to be just and right. It is by the judgment of his conscience that man perceives and recognizes the prescriptions of the divine law: "Conscience is a law of the mind; yet [Christians] would not grant that it is nothing more; ... [Conscience] is a messenger of him, who, both in nature and in grace, speaks to us behind a veil, and teaches and rules us by his representatives. Conscience is the aboriginal Vicar of Christ."[6]

Because I have come to an informed and sure judgment in conscience that I must not receive the vaccine, the Catholic Church requires that I follow this certain judgment of my conscience. The *Catechism* is clear: "Man has the right to act in conscience and in freedom so as personally to make moral decisions. 'He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters.'" 7

It is important to note that the law provides protection for sincerely held religious beliefs, even when some members of the same Church or denomination disagree with the beliefs held by the individual. Under Title VII, the test is not, in my case, what Pope Francis may believe about vaccinations, but rather, what I believe the Catholic Faith requires of me,

> [i]ntrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences . . . and the guarantee of free exercise is not limited to beliefs which are shared by all of the of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the command of their common faith. Courts are not arbiters of scriptural interpretation.

*Thomas v. Review Bd. of Ind. Emp't. Sec. Div.*, 450 U.S. 707, 715-716 (1981).

Finally, in response to your questions about any past medicine and vaccinations that I might have received, I can say that I have never knowingly accepted or received medication or vaccine(s) that were derived from the cell lines of aborted fetuses.

I am merely requesting a reasonable accommodation to my sincerely held religious objection to these vaccines. It is difficult to comprehend any undue hardship that would be placed upon WSU by this accommodation since it has been established that those who have been vaccinated are seeing their immunity wane significantly (*see*, Waning immunity of the BNT162b2 vaccine: A nationwide study from Israel, https://www.medrxiv.org/content/10.1101/2021.08.24.21262423v1) (booster shots are required to get the short-lived immunity back), it has been demonstrated that the vaccinated have "breakthrough" infections at an alarming rate, and they also shed the virus just as the unvaccinated (*see, e.g., CDC mask decision followed stunning findings from Cape Cod beach outbreak* https://abcnews.go.com/Politics/cdc-mask-decision-stunning-findings-cape-cod-beach/story?id=79148102).

The same accommodations given to the vaccinated staff to protect themselves and others will be equally efficacious for the unvaccinated.

NOTES

*Nick Rolovich*

10/3/21

[1] Congregation for the Doctrine of the Faith (CDF), "Note on the Morality of Using Some Anti-COVID-19 Vaccines," December 17, 2020, n. 5: "At the same time, practical reason makes evident that vaccination is not, as a rule, a moral obligation and that, therefore, it must be voluntary."

[2] See United States Conference of Catholic Bishops (USCCB), *Ethical and Religious Directives for Catholic Health Care Services*, 6th ed. (Washington, DC: USCCB Publishing, 2018), n. 28. Hereafter "*ERDs*."

[3] "A human being must always obey the certain judgment of his conscience. If he were deliberately to act against it, he would condemn himself. Yet it can happen that moral conscience remains in ignorance and makes erroneous judgments about acts to be performed or already committed." *Catechism of the Catholic Church* (Vatican City: Libreria Editrice Vaticana, 1993), www.vatican.va, n. 1790. Hereafter "*CCC*."

[4] See *ERDs*, nn. 32-33; nn. 56-57; Part Three, Introduction, para. 2; Part Five, Introduction, para. 3.

[5] See *ERDs*, nn. 56-57. Both of these directives state that the proportionality of medical interventions is established "in the patient's judgment."

[6] *CCC*, n. 1777, citing John Henry Cardinal Newman, "Letter to the Duke of Norfolk," V, in *Certain Difficulties felt by Anglicans in Catholic Teaching II* (London: Longmans Green, 1885), 248.

[7] *CCC*, n. 1782, citing Second Vatican Council, *Dignitatis humanae*, December 7, 1965, n. 3.