# Exhibit H

7/31/24, 6:35 PM  For Nick Rolovich and WSU, COVID vaccine mandate deadline approaches  Page 2 of 3

Case 2:22-cv-00319-TOR    ECF No. 89-9    filed 09/23/24    PageID.1337    Page 2

SPORTS > COLLEGE SPORTS • News

# Would WSU actually fire Nick Rolovich? Examining the exemption review process with the vaccine mandate deadline approaching

Rolovich has until Oct. 18 to comply with Gov. Jay Inslee's order

 By **JON WILNER** | jwilner@bayareanewsgroup.com | Bay Area News Group
UPDATED: October 7, 2021 at 6:29 p.m.

Washington State has entered the decision phase with football coach Nick Rolovich. At any point in the next 11 days, the university will determine his fate.

A mid-season dismissal is within the realm of possibility.

Rolovich announced in July that he would not receive the COVID vaccine but has offered no update on his situation, except to say that he would comply with Washington Gov. Jay Inslee's vaccine mandate.

According to that mandate, state employees in higher education must be fully vaccinated or receive a medical or religious exemption by Oct. 18. Failure to comply will result in termination.

Presuming Rolovich didn't change his stance on the vaccine but desired to remain employed, he would have submitted an exemption request by the start of this week.

At some point prior to Oct. 18, a team of at least two people trained in the exemption review process will determine if Rolovich's requests meets the standard for approval established by WSU (in conjunction with the state attorney general's office).

As with all other exemption requests — the university has received hundreds of them — Rolovich's name and department are not visible to those reviewing the application. The blind review was designed to create fairness for employees across all WSU campuses, regardless of position or salary.

There are two possible outcomes.

**— If Rolovich's request for an exemption is denied:**

He would have the option to get vaccinated by Oct. 18. If he follows that course, Rolovich would be placed on unpaid leave (or could take vacation time) until the day he becomes fully vaccinated.

(With the one-shot Johnson & Johnson vaccine, he would be eligible to return to work after two weeks.)

If Rolovich's request is denied and he refuses to get vaccinated by Oct. 18, the university would begin the separation process.

The timeline for termination differs by employment status — one process for tenured professors, another for administrative personnel, etc. Rolovich has a contract (until June 30, 2025) that includes provisions for termination with and without cause.

**— If Rolovich's exemption request is approved:**

If the blind review results in the approval of Rolovich's exemption request, the process would enter a second phase.

Washington State vice president for communications Phil Weiler could not discuss Rolovich's case specifically — the university is prohibited by law from commenting — but Weiler outlined the exemption process in general terms.

An approved request would be sent to the human resources department, which would identify the employee in question and send an email to his/her supervisor indicating the exemption had been approved.

Exhibit H Page 2

https://www.mercurynews.com/2021/10/07/would-wsu-actually-fire-nick-rolovich-examining-the-exemption-review-process-as-vaccine-mandate-deadlin…  1/3

At that point, according to Weiler, the supervisor would determine if the unvaccinated employee would be capable of "keeping the public safe" and performing his/her job effectively.

The employee would be required to follow WSU's policy for unvaccinated individuals, which includes limiting in-person contact as much as possible and, when interaction is required, wearing a mask and following social distancing guidelines.

(An unvaccinated graphic designer who works alone in an office could function effectively and keep the public safe. But that might not be the case with an unvaccinated food service employee who works close to hundreds of students.)

If the supervisor determined the unvaccinated employee could continue functioning effectively and keeping the public safe, the supervisor would notify human resources that the exemption had been granted. The employee would then be informed.

If the supervisor determined the unvaccinated employee could not function effectively and keep the public safe, then human resources would be notified the request had been denied and the employee would be informed — and he/she would have until Oct. 18 to get vaccinated.

Would Rolovich, if unvaccinated, be capable of functioning effectively and keeping the public safe?

His contract, which was obtained by the Hotline, outlines a list of 13 "specific duties and responsibilities."

They include all the standard stuff, from making staff decisions to meeting competitive goals and following sound fiscal policy with the program's budget.

— But subsection 'h' states: *"Under the direction of the Athletic Director, participate in events, activities, and/or efforts to foster support for the University's Athletic Department and/or the Football program;"*

— And subsection 'i' states: *"Serve as director of instructional youth Football programs to be held in athletic facilities at the University's Pullman campus if deemed applicable;"*

— And subsection 'j' states: *"The Athletic Director or his designee may reasonably assign other duties from time to time that are consistent with customary duties of a Head Football Coach at a Division I Football program;"*

There is more to Rolovich's job than running practice, watching film and coaching during games. If unvaccinated, would he be capable of executing the external duties (recruiting, fundraising, directing the youth programs, representing the university in public events) at the expected level?

If the exemption request were approved via the blind process, then his supervisor, athletic director Pat Chun, would determine if Rolovich could carry out his duties effectively and keep the public safe.

That's where the formal nature of WSU's process diverges from reality:

Chun won't make the determination alone.

A decision of that magnitude — Rolovich is the highest-paid state employee and the public face of WSU athletics — will be made by president Kirk Schulz, presumably with significant input from Chun and perhaps others, including provost Elizabeth Chilton, chief human resources officer Theresa Elliot-Cheslek and possibly even Marty Dickinson, chair of the WSU Board of Regents.

This is the antithesis of a typical coaching evaluation. It's an unprecedented situation — all of Rolovich's peers in the Pac-12 are vaccinated — cast against the state of Washington's attempts to contain the pandemic.

Would the university actually fire Rolovich over this?

Weiler declined to address the specific situation but said of an unvaccinated employee who doesn't meet the standards for an exemption:

"Washington State has no latitude. The Governor's mandate was clear."

---

**Support the Hotline:** *Receive three months of unlimited access for just 99 cents. Yep, that's 99 cents for 90 days, with the option to cancel anytime. Details are here, and thanks for your support.*

---

*\*\*\* Send suggestions, comments and tips (confidentiality guaranteed) to pac12hotline@bayareanewsgroup.com or call 408-920-5716*

*\*\*\* Follow me on Twitter: @WilnerHotline*

*\*\*\* Pac-12 Hotline is not endorsed or sponsored by the Pac-12 Conference, and the views expressed herein do not necessarily reflect the views of the Conference.*

*Originally Published: October 7, 2021 at 9:01 a.m.*

The Trust Project